The opinion of the court was delivered by
Miller, J.
The plaintiff, Philomene Francoise Fontenot, sues to annul an alleged donation inter vivos of her property to the defendant, Jean B. Manuel. The grounds are, that in so far as the donation purports to convey more than the usufruct during her life of the property, it was executed in error; that as a donation it is null because it does not profess to divest her of the property and no delivery was made, and that its provisions are contrary to law; in the event that the donation is maintained as of the usufruct, then the answer claims it should be annulled for non-performance of the conditions imposed on the donee, and the plaintiff finally claimed judgment against defendant for two years’ rent of the property occupied by defendant under the donation.
The defendant first filed the peremptory exception that the donation was the onerous donation; that under the conditions imposed on him defendant had incurred expenses and made improvements on the property, and that plaintiff could not maintain the suit without first tendering the amount of those charges and expenses. The exception was referred to the merits, and the defendant answered, setting up the act as an onerous donation, insisting its conditions had been fulfilled, and reiterating the allegations in his exceptions as to the expenses incurred by him and the improvements on the property made in fulfilment of the conditions imposed by the act; the answer claimed, in the event the donation was set aside, that judgment should be rendered against plaintiff for the amount of defendant’s reeonventional demand of two thousand three hundred and ninety-two dollars.
The judgment of the lower court was in favor of the plaintiff, annulling the donation, and on the reeonventional demand awarded six hundred and ninty-two dollars to the defendant. From that *1376 judgment defendant appeals, and answering the appeal plaintiff asks that he be allowed the rents claimed in the petition.
The act in controversy opens with the donation of the property, fully describing it, to the defendant on the conditions “that the donee, the said Jean Bte. Manuel, shall himself and wife reside on the premises, attend to the affairs and wants of the donor generally, provide for her wants according to her means. The donee shall also care for and protect the property of the donor as he would care for and protect his own property. In case of the illness of the donor the donee and his wife shall nurse her as they would a mother. At the death of the donor the donee shall assume full possession of the property before described and donated. Prior to the death of donor, from this day the said donee shall enjoy the possession of said property in usufruct, and cultivate the land or cause the same to be cultivated for his own use and benefit.”
The petition charges the act was intended to give the usufruct to defendant, and the court ascertains it reserves that usufruct to the donor and hence is void.
The donation inter vivos is that which divests the donor at present and irrevocably of the thing in favor of the donee who accepts it. The donor may give the usufruct to another, but can not reserve it for himself. It has been uniformly held, under this provision of the Code, that the reservation of the usufruct to the donor avoids the donation inter vivos. Dawson vs. Halbert, 4 An. 36; 5 An. 433; 12 An. 721; Civil Code, Arts. 1468, 1533. The defendant insists the donation gives the usufruct to the defendant, and hence is not in conflict with our Code on that point. The act is at best not consistent in its recitals at the death of the donor; it declares the donee shall assume full possession, yet in its conclusion it is stated that defendant, before the death of the donor, shall have possession in usufruct and cultivate the land for his benefit, thus clearly implying that until the death of the donor the usufruct was reserved to her. Again, in the body of the act is the stipulation the donee shall care for and protect the property of the donor as the donee would his own. This language referring to the property as that of the donor, to be cared for as her property, is certainly not consistent with the defendant’s pretensions that the usufruct in the life of the donor, as well as the property after her death, was given to him. If that had been intended the donation would have been simply of the property. Allu *1377 sion-to the usufruct would have been-useless. So while the. act in its closing sentence states that usufruct and possession shall be • in the donee from its date, the stipulation is inconsistent with. other parts of the act referring to the. property as that of the donor to be taken care -of ■ by the donee and giving him possession only .'at the death of the donor.- • ■ .
The conduct of. plaintiff and defendant-since-the donation .is instructive*, that both interpreted the act that plaintiff was to retain possession and -administer the property for .her benefit. Civil Code Art. 1956; 2 Hen. Digest, p. 1012, No. 7. Thus it appears that after the donation the plantation, or certainly part-of it, was cultivated on shares under contracts made by plaintiff- -exerting- control as owner, as such deriving the revenue from that cultivation. This manifests that both -appreciated she retained the usufruct. Again,- the -record of over five hundred pages-, submitted to us, teems with the comr plaints of -plaintiff that her property,- since- the act of donation, was not' properly cared for, her cattle suffered to die from want of attention, her dwelling going to decay and the fencing • suffered to rot, all from defendant’s neglect. Along with these complaints are the defendant’s denials and his testimony that he did look after the cattle, prop the-dwelling and mend the.fences. The plaintiff’s complaints and defendant’s justifications, or excuses, all-impress the. mind as part of the usual intercourse of a dissatisfied owner against.the person selected to manage that owner’s property. If the defendant had been understood to be clothed by the -act in question with the usufruct of this-property, beginning from the date of the act, besides the full ownership after the plaintiff’s death, there would have been no reason for plaintiff’s complaints as -to its management. But on the theory that the-plaintiff reserved the usufruct-of-the property, and-defendant was to manage for her-, her complaints and -his .statements justifying his management are easily, understood. Again, it appears the plaintiff paid the taxes on the property. If it had. ever been intended defendant was to 'have .the-usufruct under the donation it was for him to pay the taxes. -Civil Code, Art. 1551. So then the "conduct of-both parties, in-our .view, manifests--plaintiff, the donor, was to have the usufruct,-and that conduct-is a better.guide to the intention of- the parties -than the inconsistent statements of the act.' - * ..... i i.
Again, without objection from either-side, the testimony is-in the *1378 récord from the plaintiff that defendant was to have the property after her death if he took care of her, until which, to use her own language, she was to be master. The insistence throughout defendant’s testimony is that the act gave him the property, but it is equally true that after the donation, while he resided on the place, plaintiff exerted control as owner, and this is made to appear more distinctly in a part of his testimony when, speaking of the share contracts by plaintiff, he testifies she made the bargains,- he got no part of the share contracts, and as a part of his duty he would have made those contracts for her if she had permitted him. When to all this is added the testimony of the notary, produced by the defendant, that his direction from the plaintiff as'to the act, was that the defendant was to have the property “in fee simple to take effect after the donor’s death,” followed by the repetition from the notary that it was explained at the time of passing the act “ it was to take effect only after the death of the donor,” it seems to us that putting aside any question of the precise issue made by the' petition and giving effect to the testimony offered by defendant, and admitted over plaintiff’s objection, and looking to the conduct of the parties as aiding the interpretations of a badly- worded act, the conclusion is inevitable that the so-called donation did not, as the Code expresses it, divest the donor at present and irrevocably of the property. It sought to do that which the law prohibits.
Under the law it is the donation mortis causa that is to dispose of the testator’s property after death.
The donation that undertakes to dispose of it before death must strip the donor at once of the property. It operates in prsesenti, and any reservation' of the usufruct to the donor annuls the donation. The donation here is within this prohibition. This was the conclusion of the lower court, and we think is' abundantly sustained by the record. Civil Code, Arts. 1468, 1469; 4 An. 36, and authorities already cited. "
The ground discussed is enough to give plaintiff the case. It may be added that the act prepared to be drawn, as testified by the notary, and as explained, as he states at the time, i. e., a- donation' inter vivos to take effect at the donor’s death,' necessarily left theusufruct in the donor until her death. Such an act obviously would have violated a prohibitory law. Civil Code, Art. 1533. The defendant’s argument is, that the act gave the usufruct at- once *1379 to defendant. Then it transcended the purpose of the parties, according to the testimony of the notary, defendant’s witness. There is inconsistency in the testimony, and arising from their conduct as to the purpose really intended. It is our' impression' on the whole ease that the act is void on another ground; there was no aggregatio mentium, or at least the testimony fails to satisfy us that any concurrence of mind c f the parties finds expression in the act, repugnant as we think the act is in its terms, and contrasted as we deem it with the testimony and conduct of the parties. On this ground we hold the act void as well as on the other. ’
The defendant urges that the plaintiff should have tendered the expenses and losses incurred by' defendant in order to comply with the conditions of the act. These items claimed by plaintiff amount to two thousand three hundred and ninety-two dollars, made up of loss of crops on his plantation caused by removing to plaintiff’s plantation as required by the act; the expenses of that removal, the amount of fencing by defendant, and the cost of levees made and of lumber furnished by 'him; for two years’ services of plaintiff and his family in waiting 'on plaintiff and attending to her wants, and finally five hundred dollars claimed for the loss of society by defendant’s moving fromhis neighborhood to defendant’s plantation. This amount is claimed in the alternative, i. e., if the donation is not sustained and the want of tender of the amount pleaded as a peremptory exception, it is insisted should itself have defeated the action. In our view no tender was requisite to annul an act we hold to be void.
On the reconventional demand, in our view a large part of it is inadmissible. We have carefully considered this branch of the case, and in our opinion the amount allowed by the judgment of the lower court is ample. The defendant does not object to the allowance save as to ninety-two dollars, which we think was allowed in error.' On the claim for rents preferred by plaintiff’s answer to the appeal, we see no basis to make defendant pay rónt for land on which he resided under the stipulation in the act.
We have not discussed all the points argued by counsel because in our view unnecessary, by reason of the view we take of the act under consideration.
It is therefore ordered, adjudged and decreed that the judgment of the lower court be amended so as to restrict defendant’s judgment against plaintiff to six hundred dollars, with costs of the appeal to be paid by defendant, and that in other respects it be affirmed.