## BOLTON v. EZNACK et al.

### No. 5896.

Court of Appeal of Louisiana. Second Circuit.

June 28, 1939.

Richard B. Williams, of Natchitoches, for appellant.

A. V. Hundley, of Alexandria, for appellees.

TALIAFERRO, Judge.

Plaintiff was seriously hurt on September 9, 1937, when a truck, operated by defendant, Cleveland Bridges, ran into and knocked down the mule on which he was riding. He sues to recover damages for his injury, and alleges that the accident was due entirely to the negligence and carelessness of Bridges, the exact elements of which are set forth in the petition.

On the theory that the truck was owned by Almand Eznack, J. A. Ingram and the Ingram Gin Company, and that Bridges was their agent, and at the time was on a mission for them, these three persons were also made defendants. No facts are alleged upon which this conclusion of law is based. Specific disclosure of the facts pertinent was not asked for by defendants.

All defendants answered save Bridges. During the trial the suit as to Ingram and the Gin Company, on plaintiff's motion, was dismissed as in case of non-suit.

Eznack denies each and every allegation of the petition, especially those to the effect that at the time of the accident, or at any other time, Bridges was his agent or was on a mission for him. He also specially denies that the truck involved in the accident was then owned by him. He admits that he once did own it, but sold the same to his brother, William A. (Willie) Eznack, several months prior to the date of the accident, and that Cleveland Bridges was in possession of it when the accident occurred under a conditional agreement to acquire it from Willie Eznack.

Issue was joined by default as to Bridges.

Plaintiff's demands against Eznack were rejected; but on confirmation of the de-

fault, was awarded judgment for $3,244 against Bridges. Plaintiff appealed from the judgment rejecting his demand against Eznack. Bridges did not appeal. Therefore, the correctness of the judgment rejecting the demand against Eznack is the only question before us.

The primary question to be decided is whether Cleveland Bridges, when the accident occurred, was in fact the agent of Eznack and was on a mission for him. The ownership of the truck involved in the accident is important in that it has material bearing upon the primary question.

It appears that in the latter part of August or first of September, 1937, Ernest Bridges, brother of defendant, Cleveland Bridges, and Almand Eznack engaged in a discussion about a truck the latter owned, which the former was interested in acquiring for his impecunious brother, Cleveland, who had recently married. Eznack was willing to sell. It was the understanding between them when they parted, that within a few days Ernest would return to Eznack's place to close a trade for the truck. He did not return on the date agreed, but did so several days later, accompanied by Cleveland, and then learned from Eznack that the truck had been disposed of. He was somewhat disappointed. From this point on there are irreconcilable differences between the parties as to what transpired.

Bridges says that Eznack then told him he had another truck he would let him have, which on that date had been driven to Alexandria by his brother, Willie, and suggested that he go to Willie's house, not far away, to look the truck over. The suggestion was followed, but Willie had not returned. After waiting about one-half hour, Eznack suggested to the Bridges that they use his own car to drive down the road and meet Willie. Almand Eznack contradicts this version of the facts insofar as concerns the ownership of the truck. He says that he told them that his brother owned the truck and wished to dispose of it and that, perhaps, a trade could be closed with him therefor.

The Bridges met Willie Eznack on the road, and after a brief discussion of the truck and its condition, there was an exchange of vehicles between them. Willie Eznack and wife got in the car and the Bridges boarded the truck. They all drove back to Boyce and contacted Almand Eznack. Willie Eznack had not, previous to this time, known either of the Bridges and sought information concerning them from his own brother, who was willing to and did recommend Ernest Bridges as being responsible. At this time and place, the Bridges say, that after some discussion of the truck's mechanical condition, they drove it off for the avowed purpose of using it in hauling seed cotton to gins. The Eznacks testified that a conditional exchange was made between Ernest Bridges and Willie Eznack whereby the former was to exchange his 1929 Model "A" Ford coupe to the latter for the truck. However, before finally closing the trade, the Bridges wished to give the truck a trial to determine its condition.

While the parties were discussing the exchange, Almand Eznack says that he expressed a willingness to assist Cleveland Bridges to secure business for the truck, and stated that he was figuring on purchasing a grist mill for a customer, and if he did so, that the customer would pay Cleveland $10 to remove the mill to a new location. The Bridges say that Eznack said that he had already bought the mill and then and there engaged Cleveland to move it for $10; and that he further said that Cleveland could do the work the first day he had no cotton to haul.

A few days after the truck was delivered to Cleveland Bridges, he testified that he decided to drive over to the mill site and remove it. He was hard pressed financially and knowing that two friends had 250 posts they wished hauled to a man living in or near the City of Natchitoches, he agreed with them that he would haul the posts in return for some gasoline to operate on and their services in loading the mill. These two friends accompanied him to Natchitoches. While making the trip the accident occurred. The posts were delivered but, on arriving at the mill site it was discovered that the mill had been previously moved. Cleveland then drove the truck down to Boyce and delivered it to Willie Eznack's home and gave the keys to his wife. She says he then stated that he had decided he did not want the truck.

Plaintiff contends that in making the trip with the posts with the ultimate purpose of moving the grist mill, Cleveland Bridges was acting in the capacity of agent for Almand Eznack. We do not think this position supported by the testimony in the

case. The decided preponderance of the evidence on this point favors Eznack.

The two Eznacks testified that Almand sold this truck to a man by the name of Hilman, many months before the accident; that Hilman owed a balance on the price in the early part of the year 1937, and that Willie, with Hilman's and Almand's consent, took the truck over as owner and paid this balance; that this occurred several months prior to the date of the accident; that during this period the truck had constantly remained in Willie's actual possession and was used by him to haul logs to a sawmill. His wife corroborates his and Almand's evidence in this respect.

To two different men, Cleveland Bridges stated that he had the truck on trial and that if he ever got it back to Willie Eznack he would be more than happy, or words to that effect. The truck was then giving him considerable mechanical trouble.

While we are clear in the opinion that the testimonial proof strongly favors Eznack's version of the truck's ownership, its delivery to and the nature of its possession by the Bridges, there are, in addition, significant circumstances which argue strongly in favor of this conclusion.

Almand Eznack is a substantial, well fixed business man of Rapides Parish. It was of no financial benefit to him for Cleveland Bridges to have and operate a truck, yet the Bridges would have us believe that Almand Eznack, without any agreement as to the price of the truck or rent for its use, complacently allowed them to take possession of it for the purpose of subjecting it to a use which necessarily would depreciate its value and shorten its life of usefulness. No sensible business man would do such a thing.

After Cleveland Bridges decided not to further use the truck, he carried it back to Willie Eznack's home, not to Almand's place of business, and there surrendered it to Mrs. Eznack. Why make the delivery there if he did not know and believe that Willie Eznack was the truck's owner?

The credibility of Cleveland Bridges is materially discredited by testimony in the case. He has been charged with more than one criminal offense, on one of which, for forgery, he served a jail term. It is obvious he cares nothing about the outcome of this suit insofar as it is against him personally. He is execution proof. He refused to cooperate with Eznack in the defense of the suit, but on the contrary, evinced definite sympathy in behalf of plaintiff, and, so far as he was able, extended to him "aid and comfort" throughout the pendency of the case.

We do not think the talk between the parties about moving the grist mill can be reasonably construed into a contract of employment. We accept Eznack's testimony on the subject as being true. It is supported by reason. He had not known Cleveland Bridges prior to that time, but was well acquainted with his brother, Ernest. He regarded him as being responsible for his obligations. He is positive the grist mill had not been bought by him for his customer at that time. Negotiations for the purchase of it were on.

Out of a desire to assist Cleveland Bridges, Almand Eznack mentioned the negotiations to him, and stated that if the mill were purchased, the new owner would wish it removed to a new location, and was willing to pay $10 therefor. The mill was afterwards bought. It was removed by another party, doubtless because of Bridges' delay in following the matter up and his failure to further communicate with Eznack on the subject.

So far as we are able to discern, Eznack had no more interest in moving the mill than he did in acquiring it for his customer. Bridges knew for whom Eznack was acting in negotiating for the mill and had he removed it, he would have been acting for the new owner and not for Eznack.

Conceding arguendo the truth of Bridges' testimony concerning the contemplated removal of the grist mill, his relation to Eznack was that of independent contractor and not as employee or servant.

Eznack does not defend the case, alternatively, on the ground that the relation between him and Cleveland Bridges, as concerns removal of the mill, was that of independent contractor, but he specially denies the relationship of principal and agent alleged upon by plaintiff. It devolved upon plaintiff to prove the truth of his allegations on this score, and if the testimony adduced by him disproves such allegations, the testimony, being competent and admitted without objection, should be and will be given its due weight because it enlarged the pleadings and supplied the issue not raised thereby. Baden v. Globe Indemnity Co., La.App., 146 So. 784; Templeman v. Templeman Bros., Inc., 187

La. 482, 487, 175 So. 34; Ducote v. Ducote, 183 La. 886, 894, 165 So. 133.

It was held in Fontenot v. Manuel, 46 La. Ann. 1373, 16 So. 182, that:

"It must be borne in mind that the pleadings indicate the issue of right to be determined by the judgment, or rather the relief to be granted. But the court, in ascertaining the relief to be awarded, is guided by the testimony offered and received without objection. Whatever the allegations in the petition, the court must consider and give effect to the testimony produced. It has become a familiar rule that though a party has mistaken his rights in the petition, yet he will recover judgment according to the testimony received without objection, and that testimony which might have been excluded by an objection will bind the parties if suffered to be introduced. The judicial allegation undoubtedly binds the party in whose behalf it is made, but, if not insisted on, yields to testimony received without objection."

For the reasons herein assigned, judgment appealed from is affirmed with costs.