Burnham *v.* Ayer.

BURNHAM, *Admr.,* v. AYER.

In the absence of evidence or circumstances from which an inference can be drawn as to the time when it was made, every alteration of an instrument will be presumed to have been made after its execution.

A material alteration, without the assent of the party to be affected by it, renders the instrument void as to him.

An immaterial alteration, which does not vary the meaning of an instrument, does not avoid it, although made by the party claiming under it.

Whether an alteration is material or immaterial, is a question of law for the court; and it is error to leave that question to the jury.

Where the law would supply it, or it is in an immaterial portion of the instrument, the alteration is immaterial.

A receipt, so far as it is evidence of the payment or discharge of a debt, is open to explanation or contradiction by any competent evidence.

Where the holder of a mortgage of real estate gave to the mortgagor a receipt in full of all demands, and the mortgagor afterwards took from a third person a quitclaim deed of the mortgaged premises, written by himself, wherein the mortgage was recognized as a subsisting incumbrance upon the land, such deed was holden admissible in evidence, on the question of the payment or release of the mortgage debt, as tending to show an admission by the mortgagor, after the date of the receipt, that the mortgage was then in force and the mortgage debt unpaid; and, of course, that they were not intended to be embraced in the receipt in full of all demands.

Burnham *v.* Ayer.

WRIT OF ENTRY on a mortgage. Plea, the general issue.

The plaintiff offered in evidence the mortgage deed declared upon, which contained two pieces of land lying in Plaistow.

The first was described as follows : " Beginning at the road, and running westerly by land of John Bradley, one hundred and twenty rods; thence south-westerly, sixty rods, by Moses Currier's land; thence south-easterly, about fifty rods, by said Currier's land; thence easterly, one hundred and thirteen rods, by land of David Gile and Sarah Green; thence northerly, by the road leading from Haverhill to Exeter, to the place of beginning."

It appeared by inspection of the deed that the word, " south-westerly," was first written " south-easterly," and the letters " we " written on the letters, " ea." It appeared that by running south-westerly the line would run by Moses Currier's land, and that the line described in the deed could be traced to the point of beginning; and there was no evidence that it could be traced by running south-easterly.

The court instructed the jury that the alteration was immaterial. The plaintiff offered no evidence as to the alteration, except what resulted from the inspection of the deed.

The defendant, having offered in evidence a receipt of said White in full of all demands, dated after the mortgage note, the plaintiff, in order to satisfy the jury that the mortgage debt was not intended to be embraced in the receipt, among other things offered in evidence a quitclaim deed from the defendant's mother to himself, which was proved to be in the defendant's handwriting, and that the defendant signed his mother's name, at her request, she being unable to write. The deed was duly witnessed and acknowledged, and duly proved. The deed included the land in the mortgage, and some eight or ten acres more, and was described as subject to a mortgage to Nicholas White, and dated some time after said receipt. The plaintiff offered the said deed as evidence of an admission on the part of the defendant that the mortgage was in force and the mortgage debt unpaid at the date of it, and not intended to be embraced in said receipt.

The court admitted it; to which, and to the said instructions to the jury, the defendant objected.

The jury found a verdict for the plaintiff, which the defendant moved to set aside, and for a new trial.

*J. S. Wells,* for the defendant.

*Stickney,* (with whom was *Marston,*) for the plaintiff.

1. The instructions of the court as to the alteration of the deed were correct. Moses Currier's land named in the deed was a monument. It is a well settled principle of law that monuments control courses and distances. *Breck* v. *Young,* 11 N. H. 485; *Props. of Enfield* v. *Day,* 11 N. H. 520.

The boundary line of the land conveyed must, therefore, go by Moses Currier's land, whatever the course might be, whether it was south-westerly or south-easterly. If the course had not been altered, but had remained south-easterly, as it was originally written, the land conveyed must nevertheless be bounded by Moses Currier's land, because that was the monument referred to in the deed to fix the boundary line. The alteration, therefore, had no effect, and consequently was immaterial. *Morrill* v. *Otis,* 12 N. H. 466.

2. The deed was properly admitted.

The declarations, acts and conduct of a party, may be given in evidence against him.

The fact that the defendant, subsequent to the date of his receipt in full, took a deed of the land, subject to White's mortgage, and wrote in the deed, with his own hand, that the land was subject to that mortgage, without objection or explanation, was competent to go to the jury, because it had a tendency to contradict the defence set up by him, and was inconsistent with it. It amounted to an acknowledgment that his receipt in full did not embrace White's mortgage debt, and was not intended by the parties to discharge that mortgage.

It showed that after he had that receipt, he spoke of White's mortgage, and treated it as a valid mortgage, and not as one that

had been satisfied and discharged. His writing and taking such a deed is irreconcilable with the idea that he knew or supposed that White's mortgage had been discharged, but is entirely consistent with the idea that he considered it to be a valid mortgage at the time.

FOWLER, J. Although a different rule prevails in other jurisdictions, it has been holden, and may be regarded as settled in this State, that in the absence of evidence or circumstances from which an inference can legitimately be drawn as to the time when it was actually made, every alteration of an instrument will be presumed to have been made after its execution. 1 Greenleaf's Evidence, sec. 564; *Hill* v. *Barnes*, 11 N. H. 395.

A material alteration, without the assent of the party to be affected by it, renders the instrument void as to him. *Farmer* v. *Rand*, 2 Shepley 225; *Smith* v. *Crooker*, 5 Mass. 538.

An immaterial alteration, which does not vary the meaning of an instrument, does not avoid it, though made by the party claiming under it. *Nichols* v. *Johnson*, 10 Conn. 12; *Hatch et al.* v. *Hatch et al.*, 9 Mass. 307; 1 Greenl. Ev., secs. 567, 568, and authorities; *Smith* v. *Dunham*, 8 Pick. 246; *Granite Railway Co.* v. *Bacon*, 15 Pick. 239; *Pequaquet Bridge* v. *Mathes*, 8 N. H. 139.

Whether an alteration is material or immaterial, is a question of law for the court, and it is error to leave that question to the jury. *Bowers* v. *Jewell*, 2 N. H. 543; *Steele* v. *Spencer*, 1 Peters 552; *Stephens* v. *Graham*, 7 Serg. & Rawle 508; *Tidmack* v. *Grover*, 1 Maule & Selwyn 735; *Woodworth* v. *Bank of America*, 9 Johnson 396.

If the law would have supplied the words omitted, and afterwards inserted by the party holding an instrument, his own insertion of them will not vitiate the instrument, for the assent of the maker, grantor or obligor, to the alteration in such cases, will be presumed. 1 Greenl. Ev., secs. 567, 568, and authorities; *Hunt* v. *Adams*, 6 Mass. 519–522; *Waugh* v. *Bus-*

*sell*, 5 Taunton 707 ; *Hale* v. *Russ*, 1 Greenl. 334 ; *Knapp* v. *Maltby*, 13 Wend. 587 ; *Brown* v. *Pinkham*, 18 Pick. 172.

So an alteration, in an immaterial part of the instrument, is itself immaterial. Same authorities.

In the case before us, the alteration of the word " south-easterly " to " south-westerly," was immaterial on both these grounds. The case finds that the line must necessarily proceed *south-westerly* from the preceding angle, in order to go " by Moses Currier's land," and in order to run around the tract of land clearly intended to be described in the deed. The law, then, would have supplied the word introduced by the alteration, on the familiar principle of construction, that, in the description of land in a deed or will, fixed monuments govern rather than courses and distances. *Smith* v. *Dodge*, 2 N. H. 303 ; *Drew* v. *Drew*, 8 Foster 496, and authorities.

Upon the same principle of construction, it was wholly immaterial, to the perfection of the description and the validity of the deed, whether " south-easterly " or " south-westerly " were written in this portion of the deed, or whether nothing whatever were written there, as the fixed monument, " Currier's land," must have governed and controlled in any event. *Drew* v. *Drew*, *ubi supra*.

There can, therefore, be no doubt of the correctness of the ruling below, as to the immateriality of the alleged alteration.

And we are equally clear as to the competency of the deed from the defendant's mother to him, written and subscribed as it was by himself, as tending to explain and contradict the receipt in full of all demands, relied upon to defeat the plaintiff's mortgage.

That a receipt, so far as it is evidence of the payment or discharge of a debt, is open to explanation and contradiction in any proper way, and by any competent evidence, is too familiar to need illustration or the citation of authorities. An admission, had, or, as in this case, *incidental*, by the defendant at the date of the receipt, or subsequently thereto, that the mortgage debt was not, and was not intended to be embraced by it, was cer-

tainly competent evidence to explain and contradict the receipt. His·taking a deed, wherein the mortgage was recognized as an existing incumbrance upon the land, had some tendency to show a recognition by the defendant of the existence of the mortgage debt, notwithstanding the receipt in full. It was an indirect, incidental admission by him of its continued existence and validity. And it seems quite apparent, that had the deed been written and executed by a stranger in the absence of the defendant, and afterwards, without objection, accepted by him, his receiving title under a deed wherein the mortgage and mortgage debt were recognized as valid subsisting claims upon the land, unexplained, would have been competent, though perhaps slight evidence, to contradict the effect of the receipt, and show that the mortgage debt was not included in it. But when the deed was shown to be from his own mother, in his own hand-writing, and subscribed by him for his mother, its force and weight, as such evidence, were greatly increased. It was, therefore, properly admitted.

The objections to the rulings below not being sustained, there must be　　　　　　　　　　　　　　*Judgment on the verdict.*