(91 South. 169)

No. 25011.

### MUNN v. HOYT et al.

(Feb. 27, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Alteration of instruments ⬥⟳29—Evidence held to show that lessee had altered the lease without the knowledge or consent of lessor.**

   Evidence *held* to show that one of the lessees altered the lease without the knowledge or consent of plaintiff lessor, and that he did so fraudulently, and that the alteration was material, as it included two tracts not leased to such defendant.

2. **Alteration of instruments ⬥⟳13—Facts held not to show lessor estopped to contest validity of recorded lease by reason of alteration.**

   In an action to cancel a lease, on the ground that after it had been duly signed lessee had falsely and fraudulently altered and changed the description to exclude 80 acres included therein, and to include 80 acres not leased, a charge that lessor is estopped to contest the validity of the recorded lease *held* frivolous where lessee discovered even before the lease was recorded, and long before the well was drilled, that lessor did not own the mineral under the 80-acre tract in the original lease, so that he could not have possibly defrauded lessee and his assignee by allowing the 80 acres to remain in the lease, and getting the benefit of a test well as was alleged if lessor did not intend to allow the change made in the description.

3. **Alteration of instruments ⬥⟳16—Altered lease correctly declared void as to all land described therein except tract in which lessor owned minerals included therein.**

   Where lease was executed, rights vested by virtue thereof in lessee to that part of the land in which lessor owned the minerals were not destroyed or divested by lessee's alteration of the description to exclude part of the land and include other land not leased, and the lease was correctly declared null and void as to all land described therein except the land in which he owned the minerals.

4. **Alteration of instruments ⬥⟳2—Test of materiality is not actual injury.**

   The test of materiality of an alteration of a lease is not that it caused actual injury and it is unimportant whether it was beneficial or injurious to the party whom it is sought to charge and in determining materiality the intent in making the alteration and its consequent effect are not to be considered.

5. **Alteration of instruments ⬥⟳2—Is material where it changes the party's rights.**

   In determining the materiality of the alteration of a lease, the question is not whether the party to be charged thereunder has been or could be injuriously affected, but whether or not his rights have been materially affected, and whether the contract in its altered condition is the contract into which he entered, for that is material in a legal sense which might become material in some event.

**6. Alteration of instruments ⬉16—Court may not grant rights as to land placed in lease by unauthorized alteration.**

A reservation in a judgment in action to cancel a lease giving defendants, one of whom had unlawfully altered the lease, the right in other proceedings to enforce any claims to a lease on one-half of the land under which plaintiff owns the minerals, is clearly erroneous where such lands were included only by such alteration, in view of Civ. Code, art. 2670, stating requirements of valid lease.

**7. Landlord and tenant ⬉79(2)—Party cannot claim under materially altered lease though a bona fide holder.**

Where a lease has been materially and fraudulently altered since its execution by one claiming under it, the good faith of the holder of such lease is of no consequence, and the maker's defense of alteration cannot be avoided by proof that the defendant is a bona fide holder for value, who took without knowledge of the alteration, or of any fact putting him on inquiry.

Appeal from Second Judicial District Court, Parish of Webster; Robert Roberts, Jr., Judge.

Suit by H. L. Munn against F. D. Hoyt and others. Judgment in favor of plaintiff and defendants appeal. Judgment amended and affirmed.

Palmer & Hardin and W. B. Massey, all of Shreveport, for appellants.

Lee & Lindsey, of Minden, for appellee.

By Division B, composed of Justices O'NIELL, LAND, and BAKER.

LAND, J.  Plaintiff has instituted this suit against F. D. Hoyt and his assignee, the Sinclair Oil Company of Louisiana, Incorporated, to cancel and annul and to have declared null and void and of no effect a certain oil and gas lease on 100 acres of land in Webster parish, on the ground that, after said lease had been duly signed by plaintiff and by the defendant Hoyt, and after the delivery of the same to Hoyt, he falsely and fraudulently altered and changed the description of the land before recording said lease, so as to exclude from same two 40-acre tracts originally embraced in said lease, and so as to include in same one 40-acre tract and two 20-acre tracts which the plaintiff had not leased to Hoyt.

The defendant Hoyt and his codefendant, the Sinclair Oil Company of Louisiana, Incorporated, have filed a joint answer, in which it is alleged that the alterations and changes in said lease were made with the full knowledge and consent of the plaintiff, and that said company acquired said lease in good faith. Defendants also allege that plaintiff is estopped from denying the validity of said lease as recorded:

(1) Because plaintiff knew that he did not own the minerals under 80 acres of the land originally included in the lease, and, if plaintiff had no intention of allowing said change to be made in the description, then plaintiff executed said lease for the purpose of perpetrating a fraud upon defendant and obtaining the benefit of a test well without carrying out his agreement.

(2) Because, after the assignment of the lease to defendant company, it brought in a well producing large quantities of gas, thus proving up the territory.

(3) Because plaintiff is estopped from securing the judgment asked for in his petition by having admitted the validity of said lease in his petition, especially in so far as same covers and affects the N. W. ¼ of S. W. ¼ of N. W. ¼ of section 29, township 23, range 9, a 20-acre tract.

Defendants pray that the demands of plaintiff be rejected, and, in the event that his demands be not rejected in all respects, then that his demands be rejected, especially in so far as they apply or refer to the 20-acre tract in question.

The judgment of the lower court canceled and annulled and declared null and void and of no effect the lease, except as to the 20-acre tract, and reserved to defendants the right in other proceedings to enforce any

claims they may have to a lease on one-half of the land under which plaintiff owns the mineral rights.

The lease in question was taken as a part of a block or community lease. The plaintiff instituted the present suit as soon as he had discovered the changes made in the description of the land in the lease, and after he had called Hoyt's attention to same. Hoyt promised plaintiff to grant him a release as to the 80 acres included in the lease by alteration, but afterwards failed and refused to do so. Plaintiff owned one-half of the minerals under the 80-acre tract, which Hoyt excluded from the lease by erasure before recording the same, and previous to bringing this suit. Plaintiff offered his services to Hoyt to assist him in obtaining a lease from the owner of the other half of the minerals, but Hoyt declined this offer.

[1] This suit was instituted by plaintiff only as a last resort to preserve and to protect his legal rights, and before the Sinclair Oil Company had brought in the gas well on one of the tracts of this block lease. The testimony conclusively shows that the defendant Hoyt discovered, by the examination of an abstract, before the lease was recorded, that plaintiff owned only an undivided one-half interest in the minerals under the 80-acre tract. The testimony also clearly establishes the fact that, when plaintiff made a visit to Shreveport to notify Hoyt of the change in the lease, Hoyt denied that he had altered the same, and declared that he knew nothing about it; yet in his answer in this case Hoyt solemnly swears that he altered the lease with the full knowledge and consent of plaintiff, and charges the plaintiff with an attempt to commit a fraud on him by leasing to him 80 acres of land under which plaintiff did not own the minerals. The testimony is convincing and plain that Hoyt altered this lease without the knowledge or consent of plaintiff, and that he did so fraudulently, as he denied making the al-

teration when plaintiff questioned him about it in Shreveport. It was in the power of Hoyt, before the recordation of this lease, to have called the attention of the plaintiff to the fact that he owned only an undivided one-half interest in the minerals under the 80 acres and to have made a demand upon him to include other property in the place of it, and as a matter of fair dealing it was his plain duty to have done so. Hoyt did not do this for the obvious reason that plaintiff, who owned only 200 acres of land, had agreed to lease only one-half of it to Hoyt, and, with the 80 acres excluded, plaintiff would have had remaining only 120 acres of land, and to carve out of this tract 100 acres would have left plaintiff with only 20 acres unleased, a proposition to which Hoyt well knew that plaintiff would not have agreed.

Hoyt therefore altered the lease without consulting plaintiff about it, and the alteration is material, as it included a 40-acre tract and a 20-acre tract in section 29, township 23, range 9, and a 20-acre tract in section 30, township 23, range 9, an entirely different section, which plaintiff had not leased to him.

[2] The charge that plaintiff is estopped from contesting the validity of the recorded lease in this case is frivolous, as Hoyt discovered even before the lease was recorded, and long before the well was drilled, that plaintiff did not own the minerals under the 80-acre tract included in the original lease, and, under such circumstances, plaintiff could not have possibly defrauded the defendants by allowing the 80 acres to remain in the lease and getting the benefit of a test well under such a lease.

[3] The judgment of the lower court correctly declared the lease null and void as to all of the lands described therein except the 20-acre tract, as the alteration in the lease was material and unauthorized, and the instrument was not executory, but executed, in the sense that it evidences an executed transaction, and is a memorial of it. In

such a case the rights which vested by virtue of the transaction in the person who alters the instrument are not thereby destroyed or divested, whatever may be the effect of the alteration upon the memorial itself. Accordingly it has been held that the unauthorized alteration of a deed by the grantee so as to make it describe land not conveyed thereby does not entitle the grantor by a suit in equity, to set aside his deed and be reinvested with the title conveyed. 1 R. C. L. § 30, p. 999.

As the lease in question includes this 20-acre tract, by the consent and agreement of the parties thereto, it remains valid and binding upon them to that extent, although null and void as to the other lands therein described and included through alteration.

[4] While it is well settled that the alteration, in order to vitiate an instrument, must be material, yet it is not the test of the materiality that the alteration cause actual injury; and it is equally unimportant whether the alteration was beneficial or injurious to the party whom it is sought to charge on the instrument. Nor is the intent with which an alteration is made to be considered in determining its materiality and its consequent effect upon the validity of the instrument, though it may be of great importance with respect to the right of the party affected by such alteration to recover upon the original contract or consideration.

[5] The question is not whether such party has been, or could be, injuriously affected, but whether or not his rights have been materially affected, whether the contract in its altered condition is the contract into which he entered. That is material which might become material, and any alteration which may in any event alter the rights, duties, or obligations of the person sought to be charged is material in a legal sense.

[6] Courts cannot undertake to say that he would have made the contract as altered, and thus make it for him, merely because its terms are more favorable to him than those of the original instrument, any more than they could be justified in a like conclusion where the alteration imports additional liability. In the one case, no less than in the other, the altered paper is not the contract which the party has made; and in neither case can the courts declare it to be his contract, or enforce it as such. The law proceeds on the idea that the identity of the contract has been destroyed; that the contract made is not the contract before the court; that the party did not make the contract which is before the court; and, so adjudging, it cannot go further, and hold him bound by its speculations, however probable or plausible, that he would or ought to have entered into the altered agreement because it involved less liability than the original. 1 R. C. L. par. 4, pp. 968, 969.

The reservation, therefore, in the judgment of the lower court to defendants of the right in other proceedings to enforce any claims they may have to a lease on one-half of the land under which plaintiff owns the minerals is clearly erroneous, for the plain reason that plaintiff has made no contract to lease to defendant the 80 acres of land included in the lease by alteration, and the court is powerless to make such a contract for the parties without their consent, or reserve to defendants any right to enforce such a contract.

To the contract of lease, as to that of sale, three things are absolutely necessary, to wit, the thing, the price, the consent. C. C. art. 2670.

There is no consent here as to the thing nor as to the price of the 80 acres included in the changed contract of lease. Therefore there is no contract, and no rights to be reserved under the same to defendants, except as to the 20 acres lawfully included in said lease.

[7] The defense of the defendant oil com-

pany that it purchased this lease in good faith cannot protect it in this case. Where an instrument has been materially altered, since its execution, by one claiming under it, the bona fides of the holder of such altered instrument is of no consequence as affecting the operation of the general rule regarding the effect of unauthorized material alterations upon the validity of the instrument, and the defense of alteration set up by the maker of the instrument sued upon cannot be avoided by proof that the defendant is a bona fide holder for value, who took without knowledge of the alteration or of any fact sufficient to put him on inquiry. 1 R. C. L. § 33, p. 1002.

It is therefore ordered that the judgment appealed from be amended by striking out the reservation made to defendants of the right in other proceedings to enforce any claims they may have to a lease on one-half of the land under which plaintiff owns the mineral rights, and said judgment, as amended, is affirmed.

O'NIELL, J., concurs in the result.