18 So.2d 633

WHITMAN et al. v. WHITMAN et al.
No. 36533.

May 22, 1944.

Cline, Thompson, Lawes & Cavanaugh, of Lake Charles, for plaintiffs-appellants.

Plauche & Plauche, of Lake Charles, for defendants-appellees.

O'NIELL, Chief Justice.

John C. Whitman died at his home in Beauregard Parish on December 26, 1929,

leaving as his heirs two sons and seven daughters. The daughters were married and they and the sons were all of the age of majority. In March 1934 one of the daughters, Mrs. Ada Whitman Snyder, died, leaving as her heirs a son and daughter of the age of majority and four minor children. Their father, D. W. Snyder, qualified as natural tutor of the minor children.

John C. Whitman was survived also by his wife, Martha Ann Whitman. He owned at the time of his death 10 acres of land on which he resided, described as the SE¼ of NW¼ of NE¼ of Section 15, T.16 S., R.13 W. The property belonged to his separate estate, having been donated to him by his father. At the time of the death of John C. Whitman, his younger son, Fren B. Whitman, was yet residing with his aged parents in the humble home on the 10 acres of land. They were the only remaining occupants of the old homestead, and, being very poor, eked out a living by cultivating the four or five acres of cleared land; and by Fren's working on the public highway.

On July 9, 1932, the elder of the two sons and the seven daughters transferred their eight-ninths interest in the farm to their brother Fren B. Whitman, by an instrument which they, as plaintiffs in this suit, call a donation inter vivos. The act was not a gratuitous donation, if in fact it was a donation at all, but was made in consideration for the transferee's promise to take care of his mother to the end of her life. He had been taking care of her on the farm from the time of his father's death,—more than two and a half years before the transfer of the property was made. In fact his father had been feeble and dependent upon the son for some time before the father's death. The old couple and their son were the only persons occupying the homestead for several years before the father died; and the mother and son were the only occupants from that time until the homestead was deeded to the son. We mention these circumstances because they cast some light upon the meaning of the terms expressing the consideration in the act of transfer, and indicate that, if the transfer was a donation in any sense, it was not only an onerous donation but also, to some extent, a remunerative donation. The instrument was made as an act under private signature but was acknowledged by the parties in the presence of a notary public and two witnesses. The mother, Martha Ann Whitman, joined her older son and her seven daughters as one of the transferors, probably not understanding that the property belonged to the separate estate of her deceased husband and hence that she had no proprietary interest in it. The pertinent provisions in the deed are as follows:

"Be it known: That we [naming the mother and elder son and seven daughters], * * * for and in consideration, as hereinafter explained, have granted, *sold* and conveyed and by these presents do grant, sell and convey, with full subrogation to all our rights of action and warranty against all former owners and vendors, unto Fren B. Whitman, whose post office address is

Merryville, La., all and singular the following described real property situated in the said Parish of Beauregard, State of Louisiana, to-wit:

\* \* \* \* \*

"To have and to hold unto the said *purchaser* the above described property, together with all and singular the rights and appurtenances thereto in anywise belonging, unto the said purchaser, and to his heirs and assigns forever; and we do hereby bind ourselves, our heirs, executors and administrators, to warrant and to forever defend, all and singular, the said premises, unto the said Fren B. Whitman, his heirs and assigns, against every person whomsoever lawfully claiming the same or any part thereof.

"The consideration for which this transfer is made is understood to be, and hereby accepted as such by the *vendors* herein, as follows: The providing a home, clothing and feeding and in fact maintaining and supporting by the *purchaser* herein, the *vendor,* Mrs. Martha Ann Whitman, mother of the said *vendee,* Fren B. Whitman, so long as said *vendor* may live. [The italics are ours.]

"In witness whereof we have hereunto affixed our signatures", etc.

In describing the 10 acres of land intended to be conveyed the notary public who prepared the deed, and who was not a lawyer, wrote NE¼ where he intended to write NW¼, and by that mistake wrote the description SE¼ of *NE¼* of NE¼, intending to write SE¼ of *NW¼* of NE¼. It is admitted that the only land that John

C. Whitman owned at the time of his death was the 10-acre tract described as SE¼ of NW¼ of NE¼ of Section 15, T.6 S., R.13 W. Nor is it denied that it was that 10-acre tract that all of the parties intended and believed was being transferred to Fren B. Whitman.

On March 1, 1933, Fren B. Whitman sold the 10 acres of land to Mrs. J. S. Smith, a sister of the deceased John C. Whitman, for $100 cash; and, as the notary public copied the description of the land from the instrument of conveyance by which Fren B. Whitman had acquired the land from his brother and sisters, the error of calling the SE¼ of *NW¼* of NE¼ the SE¼ of *NE¼* of NE¼ of Section 15 was repeated.

In October 1936 Mrs. J. S. Smith negotiated to sell the 10 acres of land to her son-in-law, Clyde Franks, and in the negotiations it was discovered that the notary public who had prepared the act of conveyance by which Fren B. Whitman had acquired the land made the mistake of describing the SE¼ of *NW¼* of NE¼ as the SE¼ of *NE¼* of NE¼ of Section 15. And at the same time it was discovered that the notary public, who was the same notary who prepared the deed by which Fren B. Whitman sold the 10 acres to Mrs. J. S. Smith, repeated the error in the description of the land. Mr. and Mrs. J. S. Smith and Clyde Franks, therefore, took the deed, by which the 10 acres· had been transferred to Fren B. Whitman, to the notary public who had prepared it, and had him change the letter E into a W, so as to

make the description read SE¼ of NW¼ of NE¼ instead of SE¼ of NE¼ of NE¼ of Section 15. The correction was made on or about October 17, 1936. The elder brother and the seven sisters of Fren B. Whitman were not informed of the discovery of the error, or of the correcting of it. The correction was made therefore without their knowledge or consent and without the knowledge or consent of the mother, Mrs. Martha Ann Whitman. It is not denied, however, that the correction of the error was made in good faith on the part of the notary public and of Fren B. Whitman and of Mr. and Mrs. J. S. Smith and of Clyde Franks. The deed had not been filed for record in the recorder's office. In fact it was when the deed was brought to the recorder's office for registry on or about October 17, 1936, that the error was discovered. And it was on the suggestion of the recorder, as we understand, that the correction was made. On October 19, 1936, Fren B. Whitman, in order to correct the error in the description in the sale which he had made on March 1, 1933, to Mrs. J. S. Smith, signed an act of sale to her containing the correct description, SE¼ of NW¼ of NE¼ of Section 15, T.6 S., R.13 W. The consideration stated in this correction deed was $100 cash, which was the price which Mrs. Smith had paid to Fren B. Whitman on March 1, 1933, as stated in the deed of that date.

On October 24, 1936, Mrs. J. S. Smith sold the 10 acres of land under the correct description to Clyde Franks for $100 cash.

In May 1939 the mother and the elder brother and the six surviving sisters of Fren B. Whitman, and the major son and daughter of D. W. Snyder, and he as tutor of his four minor children, brought this suit against Fren B. Whitman and against Mr. and Mrs. J. S. Smith and Clyde Franks, to annul the so-called donation which the plaintiffs had made to Fren B. Whitman on July 9, 1932, and to recover the eight-ninths interest in the 10 acres described as SE¼ of NW¼ of NE¼ of Section 15, T.6 S., R.13 W. The judge, after hearing the evidence, rejected the plaintiffs' demands. They are appealing from the judgment.

The causes for which the appellants are suing to annul the so-called donation are as follows:

(1) That the changing of the description of the 10 acres of land, by the notary public, on October 17, 1936, was a material alteration and therefore had the effect of annulling the transfer.

(2) That the so-called donation divested the donors of all of the property that they owned and was therefore null under the provisions of article 1497 of the Civil Code, which declares that if a donation divests the donor of all of his property, and does not leave him enough for his subsistence, the donation shall be entirely null.

(3) That the consideration stipulated in the act,—that the donee should provide a home for his mother and should support and maintain her to the end of her life,—was not a valid consideration for an onerous donation, or other contract, because the obligation to support his mother was already imposed by law upon Fren B. Whitman.

(4) That the donee did not comply with the terms or conditions on which the donation was made, as an onerous donation.

The plaintiffs charged also in their petition that the instrument of conveyance was not valid as a gratuitous donation because it was not made in the form of an authentic act. But that cause of nullity is not stressed by the appellants because they concede now that the instrument which they seek to annul was not a gratuitous donation. They contend that it was an onerous donation. Article 1467 of the Civil Code provides that property cannot be disposed of gratuitously except by a donation—either inter vivos or mortis causa—made according to whatever form is prescribed by law; and article 1536 requires that a donation inter vivos of immovable property must be made by an act executed before a notary public and two witnesses. But, according to article 1526 of the Civil Code, the laws that are peculiar to donations inter vivos do not apply to onerous donations or remunerative donations except in a case where the value of the property donated exceeds by one-half the value of the charges imposed upon the donee, or exceeds by one-half the value of the services rendered by the donee. And there is no proof of such an excess of value in this case.

The plaintiffs' complaint that the change made by the notary public in the description of the 10 acres of land was made without their consent or knowledge, and was a material alteration of the instrument, might be a serious complaint but for the fact that the alteration merely substituted the 10-acre tract which the transferors intended to transfer for the 10-acre tract which was described by mistake. The alteration would have served no purpose if a third party had acquired previously a title from the transferors to the 10 acres which they intended to convey to Fren B. Whitman. But no such right or title was acquired by any third party. And it is not denied—and is proven beyond doubt—that the alteration in the description of the 10-acre tract had no other purpose or effect than to make the instrument express the true intention of all of the parties to it. The correction was not valid until it was validated by the judgment rendered in this case,—even though Fren B. Whitman or his transferee had the right, upon discovering the error in the description of the land intended to be conveyed, to compel the transferors by a suit against them to correct the description so as to conform with the intention of the parties to the instrument.

In fact the evidence leaves no doubt—and it is not disputed—that if the error in the description had been discovered at any time before Fren B. Whitman sold the property, and if he had requested the transferors then to have the description corrected, they would have consented to make the correction. They say now that they would not have consented to make the correction at the time when or after it was discovered, on or about October 17, 1936, because they contend that at that time Fren B. Whitman had ceased carrying out his obligation to provide a home for and to support his mother. The plaintiffs say that if Fren B. Whitman had sued them to cor-

rect the error in the description of the property at the time when or after the error was discovered, October 17, 1936, they would have defended the suit on the ground that he had violated the terms and conditions of the transfer by failing to provide a home for and to support his mother. But that defense would have presented a separate and distinct issue, not connected in any way with the question whether Fren B. Whitman would have been entitled to a correction of the description of the property so as to express truly the intention of the parties to the deed.

In this instance the instrument purporting to convey the 10 acres of land to Fren B. Whitman was an absolute nullity before the correction in the description of the land was made, because the transferors did not own the property described in the act of conveyance, and, according to article 2452 of the Civil Code, a sale of property belonging to someone other than the seller is null.

In the case of Munn v. Hoyt, 150 La. 729, 730, 91 So. 169, the court held that where a mineral lease was altered by the lessee, fraudulently and without the knowledge or consent of the lessor, so as to include in the description of the land leased 80 acres not described originally in the act, and so as to exclude 80 acres described originally in the act, the lease should be annulled only as to the 80 acres which were fraudulently described in the lease after its confection; but the court held the lease valid as to the 80 acres of land originally described in the instrument. The doctrine

of that case goes further than we have to go in declining to annul the altered instrument in this case. A more appropriate decision was rendered in McGinty v. McGinty, 195 La. 328, 196 So. 548, 549, where the defendant, who was the purchaser of certain real estate, altered the act of sale after it was signed, and without the knowledge or consent of the seller, so as to add to the area of land intended to be sold 110 acres, belonging to the seller but not described in the deed, and not intended to be sold. The court annulled the sale so far as the tract of 110 acres was concerned, but held the sale valid as to the land intended to be sold and originally described in the instrument. At the conclusion of the opinion rendered in that case it was said that the decision was based upon the conclusion that the parties to the sale "did not contemplate the transfer of the 110-acre tract" the description of which was added to the description in the act of sale without the seller's consent. And so it is here. The parties to the so-called donation of the eight-ninths interest in the 10 acres of land to Fren B. Whitman did not contemplate the transfer of the eight-ninths interest in the 10 acre tract which was described in the instrument by mistake, and which did not belong to them.

An alteration made in an instrument of conveyance for the purpose only—and having the effect only—of correcting an error so as to make the instrument express the true intention of the parties is not a "material alteration" in the meaning of the law which gives to a party to an instrument of conveyance a right of action

to annul it if a material alteration is made in it without his knowledge or consent. Barrabine v. Bradshears, 5 Mart., O.S., 190; Smith v. Bratsos, 202 La. 493, 12 So. 2d 245; Burnham v. Ayer, 35 N.H. 351; 2 C.J. p. 1205, § 54, and p. 1229, § 99; 3 C.J.S., Alteration of Instruments, p. 956, § 39.

In the case of Barrabine v. Bradshears, 5 Mart., O.S., 190, decided in 1817, the trial judge sustained an objection to the introduction in evidence of a sheriff's deed, on the ground that an interlineation of the words "in front", which was made in the description of the property after the deed was signed, was a material alteration. But this court reversed the ruling on the ground that the interlineation served merely to complete or perfect the description, and hence was not a material alteration. The description written originally in the deed was "a tract of land of twenty arpens, more or less, with the ordinary depth, on or near bayou Yokely, in the parish of St. Mary". The words "in front" were interpolated after the words "twenty arpens". The court said that the expression, "with the ordinary depth", when applied to a Spanish land grant or survey, meant a depth of forty arpents,—and was so understood by "those in the least acquainted with the manner in which the Spanish government laid out the land of the public domain."

In Burnham, v. Ayer, 35 N.H. 351, the alteration which the Supreme Judicial Court of New Hampshire held was not a material alteration consisted of changing the word "southeasterly" to "southwester-ly", by superimposing the letters "we" over the letters "ea", in the description in a mortgage deed.

Our conclusion is that the alteration made in the description of the ten acres of land in the instrument of conveyance, in this instance, although made without the consent or knowledge of the plaintiffs in this suit, would not be a just cause for annulling the instrument.

The second ground on which the plaintiffs sue to annul the donation which they made to their brother is founded upon article 1497 of the Civil Code, providing that a donation inter vivos must not divest the donor of all of his property, and that if he does not reserve enough for his subsistence the donation is entirely null. The evidence in this case shows that the donors did not own any other property at the time when—or at any time after—they donated to their brother their eight-ninths interest in the 10 acres of land. But the so-called donation did not divest the donors of any source of revenue. They were residing at different places, some in Louisiana and others in Texas, and none of them received any revenue from his or her ninth interest in the 10-acre farm. Only four or five of the ten acres were in cultivation, the remaining five or six acres being cut-over timber land, from which the stumps were not removed. The cultivable land was very poor farm land, the production being not enough to support the mother and son. The residence was an old house, built of undressed lumber, unpainted, and much the worse for wear. A fire, long ago, had destroyed a large part of the ceiling in one

of the rooms. To the widow and her youngest offspring, of course,—we observe with great respect—the house was very satisfying because, ·be it ever so humble, there was no place like it. But there was little or no general demand for such prop‧ erty; hence it had not much of what the real estate men call sale value. When Fren B. Whitman sold the place for $100 cash he reserved a considerable part of the house, which he took down and hauled to the town of DeQuincy, where he built another home, on a lot which he bought with a part of the $100. Several witnesses gave estimates of what the value of the property was at the time of the so-called donation,—the highest of which estimates was less than $200. Our own estimate from the testimony is $150. The ninth interest of each of the donors therefore amounted approximately to $17. One of the donors was regularly employed as driver of a school bus; and the seven others, being married women, were amply supported by their husbands. We doubt therefore that the donation in this instance, even if it were a gratuitous donation, would come within the spirit of article 1497 of the Civil Code, declaring that a donation is null if the donor does not reserve enough property for his subsistence.

There is another reason, however, why article 1497 of the Civil Code is not applicable to the‘ donation in contest in this case; that is, that the donation was an onerous donation, and to some extent a remunerative donation, and there is no proof that the value of the property donated exceeded by one-half the value of the services rendered by the donee. Article 1526 of the Civil Code provides that "the rules peculiar to donations inter vivos do not apply to onerous and [or] remunerative donations, except when the value of the object given exceeds by one-half that [the value] of the charges or of the services." There is no proof in this case that the value of the property donated exceeded by one-half the value of the charges imposed upon the donee or of the services rendered by him. The value of the property as we have said was approximately $150—certainly not more than $175. The evidence as to the value of the services rendered by the donee in supporting and caring for his mother is rather indefinite but shows that it was nearly if not quite $10 per month, making allowance for the worth of her services. According to the testimony of one of the donors the donee performed the same services for his aged father and mother for some time—which time is not shown definitely—before the father died. One of the donors, the elder sister of the donee, testified that he continued to support his mother for more than two and a half years after his father died, and that he was supporting his mother on July 9, 1932, when the donation was made. The evidence shows that the donee did not cease supporting his mother regularly until she left the home and went to visit one of her daughters in Texas, in or about February 1933. Thereafter, the mother visited one after another of her sons and daughters, spending more than a month in each year with Fren B. Whitman, up to the time of the trial of ·this case, October 14, 1939. Between the date

of the donation and the date of the filing of this suit the donee had supported his mother for the net period of about 14 months. Our opinion is that to this period should be added the 2½ years from the date of the death of John C. Whitman to the date of the donation. We say this because the circumstances justify the conclusion that the consideration for which the donation was made, as expressed in the instrument, included the services which the donee had rendered in caring for his mother. between the date of his father's death and the date of the donation. To that extent the act was a remunerative donation. Without attempting to make an exact calculation of the value of the services rendered by the donee during the 2½ years before the donation was made, or the value of the services rendered during the 14 months after the donation was made, our conclusion is that the value of the services greatly exceeded two-thirds of the value of the property donated. From this conclusion, that the value of the property donated did not exceed by one-half the value of the services rendered by the donee, the donation is not subject to annulment on the ground that it was an omnium bonorum. If the donation were subject to annulment as an onerous donation, the donors could not obtain the annulment without compensating the donee for the expense which he incurred in complying with the terms of the donation as far as he did comply. Pugh, Executor, v. Cantey, 33 La.Ann. 786; Landry v. Landry, 40 La.Ann. 229, 3 So. 728. This is in harmony with article 1514 of the Civil Code, which provides that donations by which charges are imposed upon the donee can never be reduced below the expenses which the donee has incurred to perform them.

In the case of Ackerman v. Larner, 116 La. 101, 40 So. 581, it was held that article 1497 of the Civil Code, prohibiting donations omnium bonorum, was applicable to a donation made in consideration for the donee's promise to support the donor; but in that case the court did not apply article 1497 to a donation in which the value of the property donated did not exceed by one-half the value of the services rendered by the donee. On the contrary, the court remanded the case for the purpose of hearing evidence as to whether the value of the property donated exceeded by one-half the cost of maintenance of the donor by the donee in fulfillment—up to the time of the filing of the suit—of the obligation assumed by the donee to support the donor.

The author of the opinion in Ackerman v. Larner was the author also of the opinion in Hearsey v. Craig, 126 La. 824, 53 So. 17, where it was held that the plaintiffs, suing as the heirs of the donor to annul the donation as an omnium bonorum, failed to prove that the value of the property donated exceeded by one-half the value of the services rendered by the donee, and hence that the plaintiffs were not entitled to an annulment of the donation on the ground that it was a donation omnium bonorum. In the second paragraph of the syllabus the doctrine of the case is stated thus: "Where a conveyance, purporting to be, at once, a remunerative and an onerous donation, is sought to be annulled by the

forced heirs of the donor, on the ground that she thereby divested herself of all of her property, in violation of Civ.Code, art. 1497, the burden rests upon the plaintiffs to prove that the donor has not reserved enough for her subsistence, and that the value of the property donated exceeds by one-half that of the services intended to be compensated and of the charges imposed."

The third ground on which the appellants seek to annul the donation is that the consideration stipulated in the act, that the donee should provide a home for and support his mother to the end of her life, was not a valid consideration for an onerous donation, or other contract, because the obligation was already imposed by law upon the donee. It is true that the obligation was imposed by law upon the donee, but it was imposed also upon all of the donors, as a solidary obligation. When two or more persons are under a solidary obligation in favor of a third party the assuming of the entire obligation by one of the obligors is a valid consideration for a contract between him and the other obligor or obligors.

The fourth ground on which the appellants seek to annul the donation is that the donee did not fulfill the obligation stipulated in the act, to provide a home for and support his mother to the end of her life. The answer to this complaint is that if the act of conveyance of the donors' eight-ninths interest in the property was a donation at all it was not a gratuitous donation but an onerous donation and to

some extent a remunerative donation. As we have pointed out, according to article 1526 of the Civil Code the laws peculiar to donations inter vivos do not apply to onerous or remunerative donations except where the value of the property donated exceeds by one-half the value of the services actually rendered by the donee in compliance—either wholly or in part—with the conditions or obligations imposed upon the donee by the terms of the act of donation. We have found from the evidence that the services rendered by the donee in this instance, in compliance as far as he could comply with the obligations imposed upon him by the donation, greatly exceeded two-thirds of the value of the property donated; which is the same as to say that the value of the property donated did not amount to one and one-half times the value of the services rendered by the donee. He did not wilfully violate his obligation to provide a home for and support his mother. At the time when the donation was made he had employment on the public highway, through the influence of his uncle, J. S. Smith, who was the police juror of the ward in which the nephew and his mother lived. This employment, which paid $40 or $45 a month, was necessary to enable Fren B. Whitman to support his mother, because, as we have said, the revenue from the farm was not enough to support them. The mother testified in this case: "You see he had to quit school to work on the public road after his daddy died. Then they changed bosses and he quit." The witness meant that when J. S. Smith ceased to be police juror the

nepotism ended and the nephew was left without a livelihood for himself and his mother. That happened in the latter part of 1932 or early in 1933, in the depth of the depression; and the mother and son obtained what is referred to in the testimony as "relief", from the department of Public Welfare. Meanwhile Fren B. Whitman had married a young woman who was perhaps not better off financially than he was. The mother was visiting her daughter in Texas when the son sold the home to Mrs. J. S. Smith and moved to DeQuincy. When the mother returned from Texas she lived with the son and his wife in DeQuincy for a few months but could not accustom herself to being in a home of which she was not the mistress; and there is a strong indication in the testimony that the old lady got the impression—without any intimation from her son or daughter-in-law—that in the new house in DeQuincy two were company and three were a crowd. At any rate the mother testified that the son had "done what he could" to support her and that she was quite welcome in his new home in DeQuincy. But she preferred to divide her visits among her sons and daughters.

There was no prohibition in the act of conveyance to Fren B. Whitman dated July 9, 1932, against his selling the property transferred to him. The obligation, as stipulated in the act, was merely that he should provide a home for and maintain and support his mother as long as she might live. The circumstances under which the onerous donation was made might justify the inference that the parties intended that the donee should maintain and support his mother in the home in which she and he then lived. But that was not such an implied condition as to forbid him to sell the property when it became absolutely necessary to do so in order to obtain the employment necessary to enable him to provide a home for and to support his mother.

The defendants filed pleas of prescription in this court, but our conclusion that the judgment appealed from is correct on its merits makes it unnecessary to consider the pleas of prescription.

In explanation of our having jurisdiction over this case, in which the value of the property in dispute was only eight-ninths of about $150 at the crucial or decisive date, be it said that a short time before the suit was filed an oil well was drilled and oil was produced therefrom in paying quantities at a distance less than a thousand feet from this property; in consequence of which the value of the eight-ninths of the 10 acres of land in contest had a speculative value exceeding $2,000 at the time when the suit was filed.

The judgment is affirmed.