WILLIAM A. CULPEPPER, Judge Pro Tern.
On December 28, 1972, the Globe Corporation (Globe) sold to Roy 0. Martin Lumber Company, Incorporated (Martin) certain standing timber located on a 160 acre tract of land located in St. Landry Parish, Louisiana as evidenced by a “Timber Deed” executed between the parties. The pertinent terms of the agreement were that Martin would obtain the right to remove all hardwood and cypress trees 14” and larger at the stump for a two year period, and that for an additional sum of $300.00 per year, the time in which Martin would be allowed to remove the timber could be extended for an additional two years. Martin exercised its rights of extension, thereby extending its right to remove the timber through December 31, 1977.
On September 19, 1977, Globe and Martin agreed on a further extension of indefinite duration of Martin’s right of removal of the specified timber. Under this agreement, beginning January 1, 1978, Martin would pay $500.00 per year in advance of each year of extension, such extension rights subject to termination on December 31st at least 30 days after Globe would notify Martin their extension would terminate; therefore, in order for Globe (or its successor) to prevent Martin from exercising another year of extension, it would have to notify Martin at least 30 days in advance of the next calendar year. Martin paid the advance payment for the year 1978, entitling them to an extension through the year 1978. The September 19, 1977 extension agreement was recorded in the conveyance records of St. Landry Parish, thereby subjecting subsequent purchasers of the 160 acre tract to the conditions of the extension.
On November 4, 1977, Globe sold the tract affected by the timber deed and the extension to Dugal & Trahan Ltd. Pension Trust (the Trust). Following this purchase, negotiations were entered into between Dr. James S. Dugal, a trustee of the Trust, and John F. Munsterman, an agent of Martin, for a subsequent extension agreement for the removal of the timber (The Trust-Martin extension). The negotiations between Dr. Dugal, as trustee of the Trust, and Martin occurred simultaneously with negotiations between Martin and Dr. Dugal concerning the acquisition of a hunting lease by the Lucky 13 Hunting Club on certain other property owned by Martin. The *1358 Lucky 13 Hunting Club, of which Dr. Du-gal was a member, had sought to acquire a hunting lease on the Martin owned property for some time. The agreement finally reached was that Martin would grant a five year hunting lease in favor of the Lucky 13 Hunting Club on Martin’s property for certain specified annual rental payments in exchange for a five year extension of Martin’s timber cutting rights on the Trust’s newly acquired property. Although both the Trust and Martin agree that both the Trust-Martin timber extension agreement and the hunting lease were to be for a five year period, the date on which the Trust-Martin extension was to commence is in dispute. Martin contends that the extension was to commence January 1, 1979, as evidenced by the fact that Martin had already been granted an extension for the year 1978 by Globe, the Trust’s predecessor in title. Dugal contends that the agreement between the parties was that both the Trust-Martin timber extension and the hunting lease were to commence on the same date, January 1, 1978.
The negotiations between the Trust and Martin resulted in Martin’s attorney, Alex Andrus III, drafting a timber extension agreement for a term of five years at a stipulated rental of $500.00 per year. The agreement signed by the Trustees of the Trust on March 16, 1978 showed a commencement date of January 1, 1978 for the timber extension. Subsequently, the agreement was signed by Martin on April 20, 1978 and recorded in conveyance records of St. Landry Parish on April 27, 1978. Apparently, the commencement date on the agreement was changed from January 1,1978 to January 1,1979 after signing by the Trustees of the Trust, and the commencement date at the time of signing by Martin and at recordation read January 1, 1979.
Martin made a payment of $500.00 for the first year of the Trust-Martin extension on March 14, 1978. Checks were subsequently sent to the Trust by Martin for annual $500.00 payments on November 26, 1979, November 14, 1980, November 24, 1981, and November 22, 1982. Also, a check was issued on July 31, 1981 to replace the November 14, 1980 check which was misplaced.
When Dr. Dugal, as trustee, received the November 22,1982 check, he did not cash it or deposit it in a Trust account but kept it. Meanwhile, Martin, believing that the timber extension was good through the year 1983, planned on cutting timber during the last year of the timber extension.
In September 1983, Dr. Dugal learned that Martin had commenced cutting timber on the Trust’s property about the same time that Martin sent the Trust a letter requesting deposit of Martin’s November 22, 1982 extension check. Martin ceased cutting timber when it learned of the Trust’s position that the extension commenced January 1, 1978 and ended December 31, 1982; however, it resumed cutting the timber when it discovered that the recorded document contained a January 1, 1979 commencement date which would have meant that the extension would not have expired until December 31,1983. The Trust thereafter filed suit against Martin seeking triple damages for cutting trees without the Trust’s consent in violation of La.R.S. 56:1478.1[1] and seeking an injunc *1359 tion preventing Martin from entering their land and cutting trees. Martin filed a third party action against their attorney, Alex Andrus III (Andrus), alleging that Andrus’ negligence was the sole cause of any liability attributable to Martin.
Following a trial on the merits, the trial court rendered judgment on January 6, 1986 dismissing the Trust’s demands against Martin and dismissing Martin’s third party demand against Andrus and Insurance Corporation of America (erroneously referred to in the trial court judgment as Insurance Company of North America), Andrus’ professional liability insurer. Plaintiff, the Trust, now appeals from the trial court judgment dismissing its claim against Martin. Defendant, Martin, asks this court to affirm the trial court’s dismissal of the Trust’s claim against them, but, in the event that this court does not affirm the trial court’s dismissal of the Trust’s suit, Martin asks this court to reverse the dismissal of its claim against Andrus for breach of fiduciary duty. Martin also asks this court to increase the award to Martin’s expert witness from $968.00 to $1,568.00. Third party defendant, Andrus, asks this court to affirm the trial court judgment.
EFFECTIVE DATE OF THE TRUST-MARTIN EXTENSION AGREEMENT
The trial court, finding that there was an agreement between the Trust and Martin, gave the following written reasons for judgment, which we adopt as our own:
“Having considered the evidence and briefs of counsel, I find that there was a meeting of the minds between Dr. Dugal and Mr. Munsterman, who acted on behalf of the Trust and Martin, respectively, for a five-year extension beginning January 1, 1979, during which to cut the timber which Martin had acquired of Globe. Martin was the owner of the timber and had previously paid Globe for the right to cut it in 1978. Furthermore, the evidence shows that at the time the agreement was negotiated, Dr. Dugal knew that Martin already had the cutting rights for 1978. There is no reason why Martin would have contracted to buy again that which it already owned. Too, under LSA-C.C. art. 2443, he who already is owner of a thing cannot validly purchase it.
In addition, I do not find the recorded contract to have been materially altered. While an authentic act is normally full proof of the agreement of the contracting parties unless it is proved and declared a forgery (LSA-C.C. art. 2236), where there is common consent to the terms of the contract (which I find from the evidence) and the document is changed to reflect accurately that common consent, there is no material alteration. Whitman v. Whitman, 206 La. 1, 18 So.2d 633 (1944) ...”
From our reading of the transcript, there is sufficient evidence from which the trial court could have reasonably concluded that the Trust and Martin agreed on a five year timber cutting extension beginning January 1, 1979. The fact that Globe, the Trust’s predecessor in title, had already granted Martin an extension through the end of 1978 should reasonably have led the Trust to believe that the Trust-Martin extension was not to commence until the previous extension ended. Also, John Mun-sterman, who testified on behalf of Martin, testified at trial that he and Dr. Dugal had previously discussed extending the previous extension for an additional five years and testified that he “made it plain” that the new extension was to commence January 1, 1979. Martin’s annual payments during the years 1978 through 1982 also support the trial court’s finding that the parties intended advance payments on an extension to commence on January 1, 1979.
The trial court also stated, in dictum, that even if it were found that there was no meeting of the minds between the Trust and Martin and, therefore, no contract covering the cutting rights on the Trust’s *1360 property beginning January 1, 1979, that Martin would still have the right to cut timber on the property in 1983, since Martin had continued to pay the $500.00 annual amount required to extend the September 19, 1977 agreement between Martin and Globe, the Trust’s predecessor-in-title, and since the Trust failed to notify Martin thirty days in advance of the next extension year. In fact, the Trust failed to notify Martin of its intention to terminate the earlier Globe-Martin agreement or failed to notify Martin of its understanding of the termination of the Trust-Martin extension until approximately ten months after Martin had submitted payment covering the extension for 1983. We are in agreement that the terms of the Globe-Martin extension would give Martin cutting rights on the Trust’s property through 1983; however, since we find that the trial court did not manifestly err in finding that the parties intended a five year extension of cutting rights in favor of Martin commencing January 1, 1979 and ending December 81, 1983, and in finding that there was no material alteration of the agreement, the parties are bound by the terms of their agreement. Former La.C.C. art. 1901. Accordingly, the trial court's dismissal of plaintiff's demands against Martin and of Martin’s third party demand against An-drus were correct.
EXPERT WITNESS FEES
Defendant contends in its answer to plaintiff's appeal that the trial court erred in not setting his expert witness’ fee at $1,568.00. During trial, defendant Martin called Robert G. Foley, who was accepted as an expert forensic document examiner. Mr. Foley possesses Bachelors and Masters Degrees in Chemistry, a Masters Degree in Criminal Justice and a Juris Doctorate Degree. He has attended various training courses and seminars related to his field of expertise and is certified by the American Board of Forensic Document examiners and is a member of the American Society of Questioned Document Examiners and several other related professional organizations. He has worked since 1972 with various crime laboratories and is retained by various legal institutions. Mr. Foley examined approximately fifteen different documents and letters from the offices of plaintiff and defendant and their attorneys and compared the escapement and style of the typewriters used to type the documents and letters. The trial court set Mr. Foley’s expert witness fee at $968.00.
The method and criteria for compensating expert witnesses is set forth in LSA-R.S. 13:3666, as follows:
“A. Witnesses called to testify in court only to an opinion founded on special study or experience in any branch of science, or to make scientific or professional examinations, and to state the results thereof, shall receive additional compensation, to be fixed by the court, with reference to the value of time employed and the degree of learning or skill required.
B. The court shall determine the amount of the fees of said expert witnesses which are to be taxed as costs to be paid by the party cast in judgment either:
(1) from the testimony adduced upon the trial of the cause, the court shall determine the amount thereof and include same or,
(2) by rule to show cause brought by the party in whose favor a judgment is rendered against the party cast in judgment for the purpose of determining the amount of the expert fees to be paid by the party cast in judgment, which rule upon being made absolute by the trial court shall form a part of the final judgment in the cause. As amended Acts 1960, No. 114, § 1.”
This statute vests discretion in the trial court in fixing the amount of an expert’s fees which will not be disturbed absent an abuse of that discretion. Comeaux v. Dairyland Ins. Co., 399 So.2d 802 (La.App. 3 Cir.1981). Expert witnesses are entitled *1361 to only reasonable compensation and fees must be somewhat in line with fees allowed in similar cases. State through Dept. of Highway v. Donner Corp., 236 So.2d 841 (La.App. 3 Cir.1970).
Defendant contends that Succession of Moody, 306 So.2d 869 (La.App. 1 Cir.1974), writ den., 310 So.2d 639 (La.1975) indicates that the expert witness compensation in the instant case is inadequate. In Moody, the appellate court affirmed the trial court’s awards for two handwriting experts at $2,459.50 and $1,826.06 where the experts spent a considerable amount of time in preparation for trial and were to testify in court and give their report and opinions concerning the validity of a will. In the instant case, based on the admissible evidence before us, we are not convinced that the trial court abused its much discretion in setting the expert witness fee of defendant’s expert, Robert G. Foley, at $968.00.
For the foregoing reasons, the judgment appealed is affirmed; however, the judgment of the trial court is amended to properly name and dismiss third party defendant’s professional liability insurer, Insurance Corporation of America.
AMENDED AND AFFIRMED AS AMENDED.

. La.R.S. 56:1478.1 provides in pertinent part:
"A. It shall be unlawful for any person to cut, fell, destroy or remove any trees, or to authorize or direct his agent or employee to cut, fell, destroy or remove any trees, growing or lying on the land of another, without the consent of the owner or legal possessor.
B. Whoever willfully and intentionally violates the provisions of Subsection A shall be liable to the owner or legal possessor of the trees for civil damages in the amount of three times the fair market value of the trees cut, felled, destroyed or removed, plus reasonable attorney’s fees.
C. Whoever violates the provisions of Subsection A in good faith shall be liable to the owner or legal possessor of the trees for three times the fair market value of the trees cut, felled, destroyed or removed, except however, that the provisions of this section shall apply only to trees cut or removed across ownership lines, marked boundary lines, or outside of designated cutting area lines, and that no provision herein shall apply to cutting operations *1359 within an area covered by a contract or agreement with the owner.’