## Dawson et al. *v.* Holbert, Tutrix, et al.

A donation *inter vivos*, with a reservation of the usufruct to the donor, being in violation of a prohibitory law (C. C. 1520) is null, and cannot be protected by the prescription of one year.

The prescription of one year established by art. 1989 of the Civil Code, does not apply to an action to have a simulated sale decreed to be such.

Where a third person purchases property at a sale under execution, with money furnished in whole or in part by the insolvent debtor, under an arrangement with the latter that the property shall be held by the purchaser as a trustee for the benefit of a child of the debtor, the title of the debtor will have been divested, but in fraud of his creditors. The transaction will be subject to the prescription of one year, established by art. 1989, commencing, not from the date of the sheriff's deed, but from the time when the complaining creditor obtained a judgment against the debtor.

Though a plaintiff is authorized, under art. 719 C. P., to issue execution against the surety on a twelve-months' bond, "in the same manner as on a final judgment", and is thus clothed with one of the rights of a judgment creditor of the surety, he is not really such within the meaning of art. 1989.

A PPEAL from the Fourth District Court of New Orleans, *Strawbridge*, J. Hornor, for the appellants. *Collens*, for the defendants. The judgment of the court was pronounced by

SLIDELL, J. The petitioners allege that they obtained a judgment in 1840, against *Summers*; that property of *Summers* was sold, in 1841, under a *fieri facias*; that *Summers* became the purchaser, and gave *James Holbert* as his surety in the twelve-months' bond; that, in November, 1841, *Holbert* made a donation *inter vivos* of a house and lot to his minor daughter *Julia*, reserving to himself, during his life time, the usufruct of the property; that the donation is null from its nature, and is also fraudulent and ineffectual against creditors by reason of the insolvency of *Holbert* at the time; that afterwards *Holbert* consented to a sale of the same property under an execution against him at the suit of another creditor, and bought it in by the interposition of *Daniel Phillips*. The prayer is that, the donation and the apparent title of *Phillips* be declared null, and that the property be subjected to the payment of the plaintiff's judgment. The tutrix of the minor and *Phillips* first pleaded the general issue, and subsequently the prescription of one year. Upon the plea of prescription the court below gave judgment in favor of the defendants; and the plaintiffs have appealed.

As to the donation, we have no hesitation in considering it a nullity. Our Code declares that, "the donor is permitted to dispose, for the advantage of any other person, of the enjoyment or usufruct of the immovable property given, but cannot reserve it for himself." This is a salutary departure from the Napoléon Code, by which a donor was permitted to reserve the usufruct to himself. The change was dictated by sound considerations of public policy. In the language of the jurisconsults who prepared the amendments to our Code of 1808, (which conformed to the Napoléon Code, see Code of 1808, p. 220, art. 50. Nap. Code 949), "the rerervation of the usufruct in favor of the donor would produce the disadvantage of concealing from the eyes of the public the change of property which had taken place. He who wishes to enjoy, during his life, a piece of property which he destines for another, can give it by last will; and it is not easy to perceive the use of a donation *inter vivos* with reserve of usufruct." See amendments to Civil Code, p. 203. The donation was, therefore, in violation of a prohibitory law; and such a nullity was certainly not covered by the prescription of one year.

Dismissing therefore entirely the act of donation, we proceed to examine the question of prescription with reference to the title of *Phillips* under the sheriff's deed, which was made to him in 1843, under execution at the suit of *Maher* against *Holbert*.

*Phillips* did not take possession under this deed. *Holbert* remained in possession of the property until his death, which occurred in 1847; and his widow, the tutrix of the minor, has occupied it since. *Phillips*, whose answers to interrogatories have been offered by the plaintiffs, says that *Holbert* ceased to have any interest in the property after the sheriff's sale; that it was sold to him by the sheriff upon a twelve-months' bond, and that he paid this bond at its maturity; that a portion of the money, with which he paid, he received from friends of the minor, and a portion from *Holbert*, who stated at the time of handing him the money that it did not belong to him. *Phillips* further declared that he had made the purchase at the request of the friends of the child, in order to save it for her, and not in any manner to benefit *Holbert*; and that he held himself ready at any moment to pass a title to the child.

There are three views in which this purchase may be regarded. *First*, As a mere purchase by *Phillips*, as the friend and agent of *Holbert*, with his monies and for his benefit; *Phillips* taking the paper title in his own name, but leaving the possession in *Holbert*, and standing ready to make him the paper title when he should require it. In other words as a mere simulation. *Second*, As an agreement by which *Holbert* intended that the property should inure to the benefit of his child, through *Phillips* as a trustee for her, he furnishing the money, or a portion of the money, to *Phillips* to pay the sheriff. *Third*, As a purchase by *Phillips* in good faith, for the benefit of the minor, with monies furnished not by *Holbert*, but by the friends of the minor.

Under the first hypothesis we consider the prescription of one year inapplicable. The form of the conveyance would be immaterial. A sale effected for such a purpose through the sheriff, so far as *Holbert* was concerned, would stand on the same footing as though he had made a conventional transfer in the ordinary form of a deed of sale. The case therefore would be one of simulation, and under the principles announced in *Cammack* v. *Watson*, and repeated in *Wright* v. *Chambliss*, *Linderman* v. *Theobalds*, and *Hobgood* v. *Brown*, (1 An. 132, 262; 2 An. 323, 913,) article 1989 is inapplicable.

Under the second hypothesis, the title of *Holbert* would have been really divested but in fraud of his creditors. The transaction would therefore be subject to the prescription of one year, dating however, not from the date of the sheriff's deed, but from the time the complaining creditor obtained a judgment against the debtor. To ascertain whether in the case supposed prescription has accrued, we must determine the question which has been much discussed by counsel, whether the plaintiffs are to be considered as the judgment creditors of *Holbert*, at a period more than a year antecedent to the institution of this suit. We have stated that *Holbert* became, in 1841, the surety of *Summers* in a twelve-months' bond given to the plaintiffs. The defendants contend that when this bond matured the plaintiffs occupied the attitude of judgment creditors of *Holbert*, because they had a right under the 719th article of the Code of Practice, to issue execution against *Holbert* the surety "in the same manner as on a final judgment." But though the holder of the bond is thus clothed with one of the rights of a judgment creditor, we cannot therefore consider him as really a judgment creditor. When the Code speaks, in article 1967, of creditors whose "debts are liquidated by a judgment", and, in article 1989, of a creditor who "has obtained judgment against the debtor," we must consider the language as used in its ordinary sense. We therefore conclude that the case cannot be properly determined upon the plea of prescription; and this brings us to the consideration of the third proposition, namely, whether *Phillips* is to be considered a purchaser in good faith for the benefit of the minor, with monies furnished not by *Holbert*, but by the friends of the minor.

If we could bring our minds to a conclusion upon this point in favor of the defendants, there would be an end of the case. But upon this point we are not satisfied, and have determined to remand the case for further investigation. Our reasons for doing so will be briefly stated. In the first place, we have not the benefit of the opinion of the district judge. It is possible that he may have entertained doubts as to the *bona fides* of the transaction, since he did not decide the case upon that ground, but upon the plea of prescription. In the next place the retention of possession by *Holbert* was an unfavorable circumstance, which raised the presumption of simulation. C. C. 2456. It threw the burden upon the defendants, and called for satisfactory proof of the validity of

the sale, and that the parties acted in good faith. *Phillips* acknowledges that a portion of the money to pay the twelve-months' bond, executed by him to the sheriff, was furnished by *Holbert;* and if *Holbert's* declaration at the time was true, that it was not his money, it would have been much more satisfactory if it had been shown from whom he got it. So also the silence of *Phillips* as to the names of the friends of the child who furnished him the rest of the money, is suspicious. Those friends might have been named, and then they could have been called to testify. On the other hand, it must be acknowledged that *Phillips* speaks very positively as to the absence of collusion with *Holbert.*

DAWSON<br>*v.*<br>HOLBERT.

Under all the circumstances of this case, which involves the whole fortune of the minor, we have deemed it the safest course to remand the cause for a new trial, believing that the good faith or dishonesty of the transaction can be more clearly ascertained by further evidence.

It is said in argument by the defendants' counsel that the plaintiffs are not entitled to prosecute this action, because they had not obtained a judgment against *Holbert* before the institution of the suit, and did not make his succession a party. The defendants pleaded no exception to that effect; but went to trial upon the merits and the plea of prescription. Moreover, it appears by evidence introduced without objection, that during the pendency of this cause the plaintiffs became parties to the probate proceedings in *Holbert's* succession, and were recognized as creditors of his estate.

It is, therefore, decreed that the judgment of the court below be reversed, that the plea of prescription be dismissed, and that this cause be remanded for a new trial, and for further proceedings according to law; the defendants paying the costs of this appeal.