59 So.2d 132

## ALMOND et al. v. ADAMS et ux.
### No. 40252.

March 24, 1952.

Rehearing Denied April 28, 1952.

Watson & Williams, Natchitoches, for plaintiffs-appellants.

Russell E. Gahagan, Natchitoches, for defendants-appellees.

MOISE, Justice.

This is a suit brought by seven of the eight children of the late J. H. Adams, who died on December 19, 1948, to set aside a donation inter vivos made by deceased to their brother, Leroy Adams, and his wife, Verline Dowling. There was judgment in the district court, dismissing plaintiffs' suit, and they have appealed.

The donation under attack covered decedent's one-half interest in the family homestead, consisting of 280 acres, described as follows:

"All of the donor's undivided right, title and interest in and to: $S\frac{1}{2}$ of $N\frac{1}{2}$ and $N\frac{1}{2}$ of $NW\frac{1}{4}$ in Section 26, and $NE\frac{1}{4}$ in Section 27, all in Township 12 North, Range 9 West of Red River Parish, Louisiana. This being the old home place of the donor, and it being his intention to donate to the donees herein all of his undivided right, title and interest in and to his home place whether herein correctly described or not."

The instrument effecting the donation is in the form of an authentic notarial act executed at the donor's domicile in *Red River Parish*, under date of March 17, 1947, before Russell E. Gahagan, Notary Public in and for the Parish of Natchitoches, La., and was filed of record on December 27, 1948, in Book 85, Folio 138 of the Convey-

ance Records of Red River Parish, La. The consideration recited therein is as follows:

"* * * the natural love and affection which he (decedent) has for his son, Leroy Adams, and his daughter-in-law, Verline Dowling Adams, wife of Leroy Adams, and in order to compensate them for the care and service which they have rendered unto him (decedent) during the last few years, and in consideration of their further promise to care for him and nurse him during the remainder of his (decedent's) life, * * *." (Parentheses ours.)

There is also contained in the instrument the stipulation that

"The donor reserves unto himself the usufruct of the hereinabove described property until his death. It being his intention to donate herein the naked ownership only."

Plaintiffs urge the following as substantive reasons for the nullity of the donation:

1. It is null and void ab initio for the reason that it is a donation omnium bonorum.

2. It is null and void for the reason that it divested the donor of all his property and did not leave him enough for his subsistence.

3. The donation is automatically annulled and avoided by the reservation unto the donor of the usufruct.

4. The donor is alleged to have been mentally incapable of handling his business affairs, or executing a deed or act of donation or transacting any other business, during the last five years of his life.

Defendants contend that the arguments set forth above are inapplicable to the instant case, for the reason that the donation was onerous and remunerative. They specifically deny the decedent's alleged lack of capacity.

Since the rules which are applicable to ordinary donations inter vivos are more stringent than those which govern onerous or remunerative donations, it is necessary that we weigh the transaction here between father and son in the light of the actual circumstances as disclosed by an examination of the record, bearing in mind the following pertinent codal articles:

Art. 1497, R.C.C.:

"The donation inter vivos shall in no case divest the donor of all his property; he must reserve to himself enough for subsistence; if he does not do it, the donation is null for the whole."

Art. 1523, R.C.C.:

"There are three kinds of donations inter vivos:

"The donation purely gratuitous, or that which is made without condition and merely from liberality;

"The onerous donation, or that which is burdened with charges imposed on the donee;

"The remunerative donation; or that the object of which is to recompense for services rendered."
Art. 1524, R.C.C.:

"The onerous donation is not a real donation, if the value of the object given does not manifestly exceed that of the charges imposed on the donee."
Art. 1525, R.C.C.:

"The remunerative donation is not a real donation, if the value of the services to be recompensed thereby being appreciated in money, should be little inferior to that of the gift."
Art. 1526, R.C.C.:

"In consequence, the rules peculiar to donations inter vivos do not apply to onerous and remunerative donations, except when the value of the object given exceeds by one-half that of the charges or of the services."
Art. 1527, R.C.C.:

"The donor may impose on the donee any charges or conditions he pleases, provided they contain nothing contrary to law or good morals."
Art. 1533, R.C.C.:

"The donor is permitted to dispose, for the advantage of any other person, of the enjoyment or usufruct of the immovable property given, but can not reserve it for himself."
Art. 1536, R.C.C.:

"An act shall be passed before a notary public and two witnesses of every donation inter vivos of immovable property or incorporeal things, such as rents, credits, rights or actions, under the penalty of nullity."

A study of the record develops the following facts:

The Adams property consists of 280 acres, of which roughly one-half was, at the time of the donation, either under cultivation or cleared for cultivation, and the remainder was part woods and part pasture. On this land were the main family dwelling, a five room house, and a small tenant house. The main house was occupied by J. H. Adams and his wife, Mrs. Ellen Gillen Adams, until her death in May, 1943; the small tenant house was occupied by Leroy Adams and his wife, defendants herein. In September, 1943, Leroy Adams and his wife moved from the tenant house to the main house and pooled their housekeeping arrangements with the senior Mr. Adams. The latter had suffered a stroke in 1939 and another in 1941, but he was able to care for his person until about six months before his death, at the age of over 90 years, in December, 1948. The record discloses that during these last six months it was a daughter, either of two of plaintiffs, who bathed him daily, and that neither defendant performed this service. His mental capacity during the last two years of his life, while questionable, need not be elaborated upon here.

With regard to financial arrangements, the record fails to bear out that Leroy Adams and his wife either supported the deceased or rendered services to him which were worth the sum of $2,500 as stated in the act of donation. Defendants both testified that they had never at any time paid rent for the tenant house or for the main family house. Leroy Adams himself testified that money realized from the sale of timber was used to buy groceries, that delay·rentals from an oil lease (amounting to $280 per year) were used to support the father, and further, a small oil royalty was sold and the proceeds used for the same purpose, and that additionally, during the last months of the life of decedent he re-·ceived a $50 monthly old age pension, which was also used to support him. The ledger sheets from the Bank of Coushatta show a series of deposits and withdrawals over the five-year period in question, with a net annual withdrawal as follows: from May, 1943, through the end of the year, $186.27; for 1944, $54.04; for 1945, $99.-29; for 1946, $139.02; and then, subsequent to the execution of the act of donation, this bank account, having a balance of some $600, was practically liquidated in six months' time. It is our opinion that the decedent was actually supported by his own funds and not by defendants. With regard to the purported "care and services" for which the donees were purportedly being compensated, it must be borne in mind that the deceased was not bedridden until the last few months of his life, and even then the burden of care was shared by the defendants with two of his daughters.

From the oral testimony adduced on trial, as well as from certified copies of conveyances of other lands in the vicinity of the property donated (which were filed in evidence), it would appear that the J. H. Adams place was worth substantially more than the $10 per acre (exclusive of the value of any buildings thereon) used as the basis of valuation of the donor's ½ interest in the instrument of donation. As a matter of fact, an 80-acre tract immediately adjoining was sold at $25 per acre.

Under the circumstances we conclude that: (1) the valuation of the donor's interest at $1,400 was purely arbitrary and not supported by actual land values in the area and (2) even assuming, arguendo, that this was a fair and equitable valuation,·nevertheless such services as the donees may have rendered were not sufficient to validate this transaction under the application of the "one-half" rule of Article 1526, R.C.C. Therefore, the rules peculiar to donations inter vivos are applicable to this case.

It is obvious, therefore, that the attempted donation must fall, both as to substance and as to form. The reservation of the usufruct was a radical nullity, rendering the entire donation void ab initio. Dawson v. Holbert, 4 La.Ann. 36; Haggerty v. Corri, 5 La.Ann. 433; Carmouche v. Carmouche, 12 La.Ann. 721; Tillman

 

v. Mosely, 14 La.Ann. 710; Martin v. Martin, 15 La.Ann. 585.

For the reasons assigned, the judgment appealed from is annulled, reversed and set aside, and the purported act of donation from J. H. Adams to Leroy Adams and Verline Dowling Adams, dated March 17, 1947, recorded on December 27, 1948, in Book 85, page 138 of the Conveyance Records of Red River Parish, is declared null and void; appellees to pay all costs.