387 So.2d 1297 (1980)
Mary Elizabeth CLARKE
v.
Frank Henry BRECHEEN.
No. 13492.
Court of Appeal of Louisiana, First Circuit.
July 7, 1980.
Rehearing Denied September 4, 1980.
*1298 Ashton L. Stewart, Baton Rouge, for plaintiff-appellant, Mary Elizabeth Clarke (deceased) and Ivia U. Anderson, as executrix.
Walton J. Barnes, Baton Rouge, for defendant-appellee, Frank Henry Brecheen.
Before COVINGTON, LOTTINGER and COLE, JJ.
LOTTINGER, Judge.
The plaintiff, Miss Mary E. Clarke, brought this suit to revoke a donation of immovable property which she made to the defendant, Frank H. Brecheen, in 1972. From a trial court judgment upholding the validity of the donation, the plaintiff appeals.
Two major issues are before us on appeal:
1. Was the consideration given by the defendant for the donation so insufficient that the formula of La.C.C. art. 1526, and therefore the rules peculiar to inter vivos donations, should apply?
2. If the rules peculiar to donations inter vivos apply, did the plaintiff's reservation to herself of the "use and habitation" of the immovable property render the donation a radical nullity under La.C.C. art. 1533?
*1299 Because of our decision on the two issues above, we find it unnecessary to address the question of whether the donation divested the plaintiff of all of her property in contravention of La.C.C. art. 1497.

THE FACTS
Miss Clarke, a poor, single, 67-year-old woman who subsisted primarily on social security and old age benefits, lived in a relatively rundown house at 2933 Midway Street in Baton Rouge, Louisiana. She had lived in the house for a number of years caring for the former owner, Mildred Wilson, an invalid victim of multiple sclerosis. Miss Clarke became owner of the house and lot by testamentary bequest of Miss Wilson. As owner of the house, Miss Clarke rented a part of the dwelling to boarders. Mr. Brecheen became a boarder around 1968 and lived in the house with Miss Clarke for about two years. During that time, he and Miss Clarke became fairly close personal friends. Miss Clarke occasionally cooked, washed and ironed for Mr. Brecheen, who in turn performed a few handyman services for her and made some repairs around the house. The testimony reveals that Mr. Brecheen also purchased a chair and TV set for Miss Clarke, took her to the doctor's office on occasion and paid a $142.00 phone bill left by a previous tenant. In May, 1970, Mr. Brecheen purchased a home of his own and moved into it.
On July 25, 1972, by authentic act filed in the conveyance records of East Baton Rouge parish, Miss Clarke donated the Midway Street house and lot to Mr. Brecheen. The pertinent wording of the act of donation reads:
"DONOR declares that the subject donation is executed in favor of DONEE in consideration of the gratitude and affection DONOR bears for DONEE because of the assistance and services rendered by DONEE to DONOR.
"It is understood by and between the parties hereto that DONOR retains the right of use and habitation of the within donated property for life, and shall actually continue to use the property as her home, except and unless she is forced by illness to live elsewhere temporarily. It is further understood by and between the parties that DONOR retains the right of income from mineral rights, oil leases, royalties and timber sales for life."
Almost immediately after the donation was made, Brecheen began paneling the walls, replacing worn ceiling tiles and fixing some of the decayed areas of the house. He also added a second bathroom on the back porch and painted the exterior of the house. He then rented the house to other tenants.
A short time after the act of donation was confected, Miss Clarke suffered a heart attack and had to be hospitalized. The record indicates that she lived in the house a few weeks after returning from the hospital but soon moved in with Mrs. Viola Anderson and Mrs. Anderson's mother, Ivia Anderson, who lived on Midway Street nearby. Miss Clarke continued to reside with the Andersons through the time of this trial. The record reveals that Miss Clarke did not possess the mental faculties of a normal person her age, but no claim is made that her lack of mental capacity in any way affected the validity of the act of donation.
Miss Clarke filed this suit in 1978 seeking to nullify the donation under the provisions of La.C.C. arts. 1497 and 1533. The defendant answered, denying Miss Clarke's allegations and contending that the donation was remunerative. Assuming the position of plaintiff in reconvention, Mr. Brecheen claimed that, if the donation was defective, Miss Clarke owed him the sum of $5,472.86, representing remodeling costs, insurance and taxes. Miss Clarke denied the allegations of the reconventional demand. She also filed a supplemental and amending petition alleging that Brecheen's possession of the property was in bad faith because the defendant knew at the time of the donation that the purported donation divested Miss Clarke of all of her property and that the purported donation reserved the use and habitation of the property to Miss Clarke. Consequently, she sought as damages the fair market rental value of the property *1300 from the date of donation to the time of trial-a total sum of $12,000.00.
In his reasons for judgment, the trial judge found that the plaintiff failed in her burden of proving the value of the property at the time of the donation. The basis for the court's holding was that the plaintiff's expert real estate appraiser "was admittedly unable to determine the value of the house in its 1972 condition." The trial court held further that the plaintiff failed to prove that the value of the services for which the property was donated "was out of proportion to the value of the house." Because of his finding that the plaintiff did not prove the facts necessary to support her allegations, the trial judge upheld the donation.
Miss Clarke died four days before the trial court judgment was rendered. Her succession executrix, Mrs. Ivia Anderson, has been substituted as party plaintiff.

THE LAW
The Louisiana Civil Code lists three types of donations inter vivos: the gratuitous donation, the onerous donation and the remunerative donation. La.C.C. art. 1523. We are concerned in the case at bar with a remunerative donation, one which is made to recompense another person for services rendered or charges incurred. La.C.C. arts. 1523, 1525 and 1526. Though a remunerative donation is not based solely on a spirit of liberality and gratitude, such a donation will still be subject to the rules peculiar to gratuitous donations if "the value of the object given exceeds by one-half that of the charges or of the services." La.C.C. art. 1526. The formula in this article has been interpreted to mean that, if the value of the charges or the services is not greater than two-thirds the value of the donated object, the rules peculiar to gratuitous donations inter vivos will apply. Whitman v. Whitman, 206 La. 1, 18 So.2d 633 (1944); Succession of Danos, 359 So.2d 679 (La.App. 1st Cir. 1978).
If Article 1526's formula is met, the donation under consideration will be subject, inter alia, to the rule of Article 1533, which prior to 1974 read:
"The donor is permitted to dispose, for the advantage of any other person, of the enjoyment or usufruct of the immovable property given, but cannot reserve it for himself."
Although Article 1533 was amended by Act 210 of 1974 to allow the donor to reserve for his own advantage the enjoyment or usufruct of the immovable property, a general and well settled principle of statutory construction requires us to give the new article prospective application only. La.C.C. art. 8. At least two courts which have addressed the problem have indicated that the 1974 amendment will be given prospective application only and that acts of donation confected prior to the amendment will be governed by the prior provisions of Article 1533. Russell v. Culpepper, 344 So.2d 1372, 1380 (La. 1977); Estate of Richard v. Richard, 321 So.2d 375 (La.App. 3rd Cir. 1975); see also Whitten v. Whitten, 303 So.2d 238 (La.App. 2nd Cir. 1974).

MANIFEST ERROR
We are convinced that the trial court committed manifest error in holding that the plaintiff did not prove the value of the house at the time of the donation in 1972. While the real estate appraiser's testimony was at times confusing, he testified unequivocally that the value of the house in 1972, given the condition of the property as described to him by counsel and various witnesses, was $6,000.00 to $7,000.00. The defendant introduced no testimony or other evidence to refute or rebut the plaintiff's appraiser's valuation. The trial judge was clearly wrong when he stated in his written reasons that the appraiser's estimate was based on the 1978 condition of the house. The record reveals that the $6,000.00 to $7,000.00 valuation was based on the 1972 condition of the house, and this point was elucidated by questioning from plaintiff's counsel on redirect examination.
We find additionally that the trial court erred in failing to apply the rules peculiar to donations inter vivos to the donation *1301 in this case. While there is no question that Mr. Brecheen performed a number of neighborly services for Miss Clarke and purchased a few items of furniture and appliances for her, the record reveals that these services and objects performed and given by Mr. Brecheen came nowhere near two-thirds the value of the property in 1972. See Whitman v. Whitman, supra; Succession of Danos, supra; La.C.C. art. 1526. Therefore, although the donation was a remunerative donation, the value of the services and objects given were below the value required to meet the formula of Article 1526. Consequently, the rules peculiar to donations inter vivos must apply.
Obviously, the rules peculiar to donations inter vivos would apply a fortiori were we to find that the donation in this case was purely gratuitous-and interpretation which is not necessarily precluded by the wording of the act of donation. We must also state in this connection that the gratuitous or remunerative nature of this donation must be determined by the rules defining those particular donations (La.C.C. arts. 1523 et seq.), and not by the rule of La.C.C. arts. 1772 and 1773, which are general rules dealing with the motive for entering into conventional obligations. Where the Civil Code provides special rules for determining the nature of a particular act, those special rules will supercede other codal rules which are general in nature. The case at bar is governed by Title 2 of Book 3 of the Civil Code which deals with donations, and not by Title 4, which deals with conventional obligations.

DID THE RESERVATION OF THE `USE AND HABITATION' CONTRAVENE ARTICLE 1533?
We turn now to the issue of whether the reservation of the "use and habitation" by Miss Clarke fell within the prohibition of Article 1533 prior to the 1974 amendment. As indicated above, Article 1533 prior to its amendment precluded a donor from reserving to himself the "enjoyment or usufruct" of the property given to the donee. The prohibition of Article 1533 became law in Louisiana for the first time with the adoption of the Louisiana Civil Code of 1825. (Article 1520 of the Louisiana Civil Code of 1825.) Prior to 1825, Louisiana, like France, permitted the donor to reserve for his own advantage or to give to another the usufruct of the immovable property donated. (Article 50 of the Digest of 1808 and Article 949 of the French Code Civil.) The redactors of the Civil Code of 1825, in the Projet to that Code, inserted the prohibition against reserving the usufruct and stated as a reason:
"The reservation of the usufruct in favor of the donee [donor] would produce the disadvantage of concealing from the eyes of the public the change of property which had taken place. He who wishes to enjoy during his life a piece of property which he destines for another, can give it by last will, and it is not easy to perceive the use of a donation inter vivos, with reserve of usufruct." Projet of the Louisiana Civil Code of 1825, page 209; see Dawson v. Holbert, 4 La.Ann. 36 (1849).
Whatever the validity of the reason for the prohibition given by the redactors, our courts have consistently held that a reservation of usufruct on behalf of the donor renders radically null the donation which contains such a reservation. A donation containing such a reservation is an absolute nullity. Dawson v. Holbert, supra; Fontain v. Manuel, 46 La.Ann. 1373, 16 So. 182 (1894); Haggerty v. Corri, 5 La.Ann. 433 (1850); Straus v. Elliot, 43 La.Ann. 501, 9 So. 102 (La. 1891); Almond v. Adams, 221 La. 234, 59 So.2d 132 (La. 1952); Heintz v. Gilbert, 140 So.2d 518 (La.App. 1st Cir. 1962).
Generally speaking, a person who has a usufruct over immovable property has two basic rights-the right to possess, use and enjoy the property and the right to receive the fruits produced by the property. La.C.C. art. 539; see also former Article 533 prior to its amendment in 1976. In the old case of Straus v. Elliot, supra, the Supreme Court held that the reservation of the "use and occupancy" was prohibited under Article *1302 1533. The court said the words "use and occupancy" are equivalent in meaning to "use and habitation," the words used in the act of donation in the case at bar. The court in Straus reasoned also that the "use" is included within the term "usufruct" mentioned in Article 1533. A reservation of the "use" of the property would therefore fall within the prohibition of that article. In the case of Heintz v. Gilbert, supra, this court held that the reservation of "occupancy" to the donor was also violative of the prohibition of Article 1533.
While it is clear that the language in the act of donation in the case at bar did not reserve to Miss Clarke the right to receive all fruits of the property, the reservation of the "use and habitation" fell sufficiently within the prohibition of Article 1533 to render the donation absolutely invalid. The donation must therefore fall under that article.
Having found that the donation is invalid under Article 1533, we need not decide the question of whether the donation is also invalid under Article 1497, which prohibits a person from divesting himself of all of his property without reserving enough for his subsistence.

DAMAGES
Mr. Brecheen's claim for improvements and expenses, and Miss Clarke's claim for rents, are dependent upon the good or bad faith of Mr. Brecheen in his possession of the donated property. For purposes of accession, our code defines the bona fide possessor as one "who possesses as owner by virtue of an act sufficient in terms to transfer property, the defects of which he was ignorant of." La.C.C. art. 503 prior to 1979 amendment. The code also defines good faith in the context of acquisitive prescription. La.C.C. art. 3451. In matters of accession, good faith is dependent on the existence of a just title-an act sufficient to transfer ownership, such as a sale, an exchange or a donation. Yiannopoulos, 2 La. Civil Law Treatise, Property, § 195 at 527 (2nd Edition 1980); La.C.C. art. 3485. The issue in the case at bar is whether a donative title which is radically defective as a matter of law can nonetheless serve as a "just title" for purposes of good faith as that term relates to accession.
We are cognizant of cases which hold that a person who possesses under an error of law cannot be a bona fide possessor. Heirs of Dohan v. Murdock, 6 So. 131 (La. 1889); McDade v. Bossier Levee Board, 33 So. 628 (La. 1902); Thibodeaux v. Quebodeaux, 282 So.2d 845 (La.App. 3rd Cir. 1973). Likewise, courts have held that a title which is absolutely null cannot be considered a just title. Hicks v. Hughes, 65 So.2d 603 (La. 1953); Whitten v. Whitten, 303 So.2d 235 (La.App. 2nd Cir. 1974). However, the cases dealing with errors of law as such errors relate to just title concern errors in the chain of title about which the vendee was presumed to know, or they concern errors of law in relation to acquisitive prescription, which is a different matter than accession. And the cases dealing with absolute nullities as such nullities affect just title have been concerned with the right of a person to invoke acquisitive prescription and not with the rights and liabilities of possessors as to the fruits of property they possess.
Under French doctrine and jurisprudence, good faith for purposes of accession is not precluded by an error of law or an error of fact. A possessor may be in good faith even though his title is null or annullable on account of defects in form or substance. Yiannopoulos, supra, at 528; see also Note, 8 Tulane Law Review 596 (1934). Under both French and Louisiana Law, good faith is always presumed. La. C.C. art. 3481.
We are convinced from a thorough review of the record that Mr. Brecheen had no knowledge of any defect in his title and that he never had reason to suspect any defect in the donated title he received from Miss Clarke. Indeed, Miss Clarke's title was valid. We find, too, that the act which transferred the property to Mr. Brecheen was, indeed, an act translative of ownership. We are convinced that Mr. Brecheen *1303 had no idea that the reservation of the usufruct rendered the donation an absolute nullity. Mr. Brecheen had no knowledge of any facts which did or should have put him on notice of any defect in his title. Regardless of whether the donation was void ab initio as a matter of law, Mr. Brecheen nonetheless possessed under an act translative of title and he was ignorant of the defects in the title. We hold, therefore, that Mr. Brecheen was a bona fide possessor for purposes of accession. We will therefore apply by analogy La.C.C. art. 1569 which relieves a donee from restoring the fruits to the donor until the demand for revocation or recission is made. We think this rule should also apply in cases in which a donation is sought to be annulled as a matter of law when the donee is a bona fide possessor.
As a bona fide possessor, Mr. Brecheen is entitled to the lesser of the fair market value of the improvements or the enhanced value of the property, at the option of Miss Clarke's succession representative. The succession executrix, in turn, is entitled to the rents actually collected by Mr. Brecheen on the property from the date of judicial demand until this judgment becomes final. We will remand this case so that the succession executrix can decide which option to take and so that the amount of rents actually collected from date of judicial demand can be determined, and a final judgment rendered.
Therefore, for the above and foregoing reasons, the decision of the trial court upholding the donation is reversed. This case is remanded for the purpose of taking additional evidence consistent with the views expressed hereinabove. The costs of this appeal will be borne by the defendant.
REVERSED AND REMANDED.