**Ida Marie Cutler LYONS, etc., et al., Plaintiffs–Appellants,**

v.

**Franklin Lee FISHER and Hunt Oil Company, Defendants–Appellees.**

No. 87–4842.

United States Court of Appeals, Fifth Circuit.

June 27, 1988.

Patrick D. Gallaugher, Jr., J. Michael Veron, Edwin K. Hunter, Lake Charles, La., for plaintiffs-appellants.

J.P. Saal, Jr., Gueydan, La., Raymond A. Beyt, Pat W. Gray, Lafayette, La., for defendants-appellees.

Before WISDOM, GEE, and JONES, Circuit Judges.

WISDOM, Circuit Judge:

This appeal presents two questions: (1) Whether a 1968 sale of a usufruct for ten dollars and "other good and valuable consideration" was a disguised reservation of a usufruct in violation of an earlier version of Louisiana Civil Code article 1533?; and (2) Whether, under the Louisiana Civil and Mineral Codes, a nonowner's conveyance of land and reservation of a mineral servitude both became effective when the nonowner inherited the property? Because we agree with the plaintiffs that both questions must be answered in the affirmative, we reverse the district court's grant of summary judgment in favor of the defendant, and we remand this case.

## I. FACTS AND PRIOR PROCEEDINGS

On May 7, 1968, Julie Fisher donated the northwest quarter of section 34, township 11 south, range 3 west, Vermillion Parish, Louisiana ("Northwest Quarter"), to her

son, Franklin Fisher, and daughter, Hazel, in indivision. In this donation, Julie Fisher reserved a mineral servitude [1] in the Northwest Quarter. The very next day, May 8, 1968, Franklin and Hazel purportedly sold the usufruct [2] of the Northwest Quarter's surface to their mother, Julie, for ten dollars ($10.00) and "other good and valuable consideration and services rendered". On November 27, 1972, Hazel Fisher conveyed her interest in the Northwest Quarter to Franklin Fisher, reserving a mineral servitude. Julie Fisher died intestate on January 12, 1975. She was survived only by Hazel and Franklin, so that they inherited her estate in indivision. In November 1978, mineral operations commenced on the Northwest Quarter. On July 28, 1980, Hazel died intestate.

In August 1982, Hazel's heirs and Franklin Fisher jointly leased the Northwest Quarter for mineral exploration to Hunt Oil Co. In March 1985, Franklin and Hunt Oil executed an amendment to the 1982 lease in effect recognizing Franklin as the sole owner of the minerals underlying the Northwest Quarter.

On November 27, 1985, Hazel's heirs commenced this action in Louisiana state court, seeking a declaratory judgment recognizing their ownership of an undivided one-half mineral interest in the Northwest Quarter. The defendants removed the suit to federal court on the basis of diversity jurisdiction. Upon Franklin Fisher's motion for summary judgment, the district court recognized Franklin as the owner of the disputed mineral servitude and dismissed the complaint. The plaintiffs appeal.

## II. DISCUSSION

The plaintiffs argue that Julie Fisher's 1968 donation and her children's reciprocal sale of the usufruct together violated former Louisiana Civil Code article 1533 [3] as a donation with a disguised usufruct reservation, an absolute nullity, which must be ignored by this Court. Under this rationale, Julie Fisher had ownership of the Northwest Quarter until her death in 1975. The plaintiffs next urge the application of the "after acquired title" doctrine; they argue that Hazel Fisher's 1972 Northwest Quarter conveyance and mineral servitude reservation both became effective in 1975 when by intestacy Hazel acquired title to a one-half interest in the Northwest Quarter. Thus, the mineral servitude was created in 1975, and it was not extinguished by liberative prescription for ten years nonuse,[4] because mineral operations on the Northwest Quarter commenced in 1978.

The defendant disputes each level of the plaintiffs' analysis. The defendant contends that the 1968 usufruct sale did not violate Civil Code article 1533, because the sale was supported by sufficient consideration. The defendant next argues that Hazel Fisher's 1972 mineral servitude reservation was invalid because Mineral Code article 24 [5] allows only a landowner to create a mineral servitude. The defendant also contends that the plaintiffs' after acquired title argument is precluded by Mineral Code article 76,[6] prohibiting the reservation of a mineral servitude expectancy.

### A. The 1968 Transaction and Article 1533

■ At first glance, one might think that review of this issue is unnecessary. The

1. "A mineral servitude is the right of enjoyment of land belonging to another for the purpose of exploring for and producing minerals and reducing them to possession and ownership." La. Rev.Stat.Ann. § 31:21 (West 1975). In Louisiana, "oil and gas are not subject to absolute ownership as specific things apart from the soil of which they form part; and a grant or reservation of such oil and gas carries only the right to extract such minerals from the soil". *Frost–Johnson Lumber Co. v. Salling's Heirs,* 150 La. 756, 91 So. 207, 243 (1922). *See* McDougal, *Louisiana Mineral Servitudes,* 61 Tul.L.Rev. 1097, 1098–1100 (1987) (hereinafter McDougal).

2. "Generally speaking, a person who has a usufruct over immovable property has two basic rights—the right to possess, use and enjoy the property and the right to receive the fruits produced by the property." *Clarke v. Brecheen,* 387 So.2d 1297, 1301 (La.Ct.App. 1st Cir.1980).

3. See note 7 and accompanying text.

4. *See generally* La.Rev.Stat.Ann. §§ 31:27-:41 (West 1975).

5. See note 25.

6. See note 16 and accompanying text.

district court stated that its judgment was not dependent on the 1968 transaction's validity. The district court reasoned that under any analysis the mineral servitude was extinguished in 1978 by liberative prescription, but the district court erroneously assumed that under any analysis the liberative prescription period commenced in 1968. Both the plaintiffs and the defendant agree that, if the 1968 transaction violated article 1533, a mineral servitude was not created in 1968, and the liberative prescription period did not then commence. The district court's analysis is wholly dependent upon the validity of the 1968 transaction. We must, therefore, review the merits of this issue.

The plaintiffs argue that the 1968 transaction violated former Louisiana Civil Code article 1533, which stated: "The donor is permitted to dispose, for the advantage of any other person, of the enjoyment or usufruct of the immovable property given, *but cannot reserve it for himself*." [7] This provision was amended in 1974,[8] but Louisiana courts have given the amendment only prospective application.[9] The 1968 transaction therefore is governed by the earlier article. According to the plaintiffs, the 1968 transaction included a disguised usufruct reservation, because the usufruct sale was supported by the nominal consideration of ten dollars. The defendant's only rebuttal is that the consideration was more than nominal because the parties' agreement cited "other good and valuable consideration".

Louisiana jurisprudence supports the plaintiffs' argument. In *Clarke v. Brecheen*[10] the court analyzed an analogous problem: the validity of a usufruct reservation was dependent on whether the underlying property transfer was a sale or a donation. The plaintiff argued that the property transfer was a donation supported by nominal consideration, where the authentic act read:

DONOR declares that the subject donation is executed in favor of DONEE in consideration of the gratitude and affection DONOR bears for DONEE *because of the assistance and services rendered* by DONEE to DONOR.[11]

The court agreed that the transfer was a donation because of the insufficient consideration, and the court then held that the plaintiff's reservation of the "use and habitation" of the property violated article 1533.

The facts in this case are distinguishable from those in *Clarke* but the same analysis applies to both cases. Here the parties did not disguise the underlying property transfer, which they admitted was a donation. The parties instead disguised the usufruct reservation as a usufruct "sale". The plaintiffs are correct in characterizing the usufruct sale's consideration as nominal. Ten dollars is insufficient consideration for the lifetime usufruct of almost any property,[12] except perhaps a square foot of swamp land in the Atchafalaya Basin. The recital of "other good and valuable consideration" does not change our analysis, be-

---

7. La.Civ.Code art. 1533 (J. Dainow ed. 1961) (emphasis added). Article 1533 was intended to insure compliance with Louisiana's procedures for mortis causa donations. A donation of property with a usufruct reservation is a donation mortis causa, but it is made in the form of an inter vivos donation. A donation mortis causa must be made by a last will and testament, La.Civ.Code Ann. art. 1570 (West 1987), whereas an inter vivos donation "is an act by which the donor divests himself, at present and irrevocably, of the thing given". *Id.* art. 1468. The redactors of the 1825 Code inserted the prohibition against usufruct reservations to prevent concealment of the property transfer. *See Clarke v. Brecheen*, 387 So.2d 1297, 1301 (La.Ct. App. 1st Cir.1980); *Succession of Delaune*, 138 So.2d 41, 49–50 (La.Ct.App. 1st Cir.1962).

8. *See* Act No. 210, 1974 La. Acts 531.

9. *See, e.g., Clarke v. Brecheen*, 387 So.2d 1297 (La.Ct.App. 1st Cir.1980); *Estate of Richard v. Richard*, 321 So.2d 375 (La.Ct.App. 3d Cir.1975).

10. 387 So.2d 1297 (La.Ct.App. 1st Cir.1980).

11. 387 So.2d at 1299 (emphasis added).

12. The "sale of a plantation for a dollar could not be considered as a fair sale; it would be considered as a donation disguised". La.Civ. Code Ann. art. 2464 (West 1952). See also *Spanier v. DeVoe*, 52 La.Ann. 581, 27 So. 174, 175 (1900), invalidating a conveyance of immovable property as a disguised donation because the consideration of five dollars was a "mere incident".

cause Louisiana Civil Code article 2464 [13] requires a contract to have a "fixed and determined" price.[14] The timing of this transaction also reveals its disguise; the usufruct "sale" occurred the day after Julie Fisher donated the Northwest Quarter to her children. Clearly this transaction violated former article 1533, which makes it an absolute nullity to be ignored by this Court.[15]

## B. *The Mineral Servitude and the After Acquired Title Doctrine*

■ Because the 1968 transaction was an absolute nullity, Hazel and Franklin Fisher did not acquire ownership of the Northwest Quarter until their mother's death in 1975. We must now determine whether in 1972 Hazel Fisher could transfer her future interest in the Northwest Quarter subject to a mineral servitude reservation. The plaintiffs argue that Hazel's conveyance and reservation are valid under the after acquired title doctrine. The defendant admits that Hazel could transfer her after acquired interest in the Northwest Quarter, but the defendant argues disingenuously that her mineral servitude reservation violated Mineral Code article 76.

Article 76 states: "The expectancy of a landowner in the extinction of an outstanding mineral servitude cannot be conveyed or reserved directly or indirectly." [16] This article codifies the holding of *Hicks v. Clark* [17] that "the reversionary interest is not an object of commerce".[18] In *Hicks* Raines sold property to Brown reserving a

mineral servitude. Brown then sold the property to the Hicks Co. subject to Raines's outstanding mineral servitude. Hicks then sold the property to the Red Chute Land Co. subject to a "right of reversion" [19] of Raines's outstanding mineral servitude. When Raines's mineral servitude expired, Hicks's successors claimed ownership of the servitude. The court found, however, that the current landowner gained the right to explore for minerals, because the ownership of the land and the mineral servitude merged upon the expiration of the servitude. Hicks's reservation of the expectancy "would cause the land to be burdened with a mineral servitude for a longer period than 10 years without user, contrary to the public policy of this state that the right to explore for oil, gas, and other minerals in the absence of use reverts to the land in a period of ten years".[20]

Article 76 is inapplicable in this case. This case involves an agreement to create a mineral servitude in the future. This 1972 agreement was dependent on Hazel's future ownership of the property. *Hicks* involved an attempt to perpetuate an outstanding mineral servitude on behalf of a previous landowner.

In analogous situations, Louisiana courts have upheld agreements to create mineral servitudes in the future.[21] In *Ober v. Williams* [22] a landowner executed a contract to sell land in the future subject to a mineral servitude reservation. When a dispute arose about the date of the mineral servitude's creation, the Louisiana Su-

---

**13.** "The price of the sale must be certain, that is to say, fixed and determined by the parties.". La.Civ.Code Ann. art. 2464 (West 1952).

**14.** In the old case of *Conway v. Bordier*, 6 La. 346 (1834), for example, the Louisiana Supreme Court invalidated a contract that recited "a good and valuable consideration" as violative of article 2454's predecessor, article 2439 of the 1825 Code.

**15.** *See* La.Civ.Code Ann. art. 2030 (West 1987).

**16.** La.Rev.Stat.Ann. § 31:76 (West 1975).

**17.** 225 La. 133, 72 So.2d 322 (1954); *see also* Note, 15 La.L.Rev. 231 (1954).

**18.** La.Rev.Stat.Ann. § 31:76 comment. *See also* McDougal at 1106–08; McCollum, *A Primer for*

*the Practice of Mineral Law Under the New Louisiana Mineral Code*, 50 Tul.L.Rev. 729, 752–54 (1976).

**19.** *Hicks*, 72 So.2d at 323. Professor McDougal has noted that the *Hicks* "court used the term right of reversion, but no such term exists in the civil law". McDougal, at 1106 n. 49.

**20.** *Hicks*, 72 So.2d at 325.

**21.** For an excellent discussion of these cases, see La.Rev.Stat.Ann. § 31:28 comment, at 515–18 (West 1975).

**22.** 213 La. 568, 35 So.2d 219 (1948).

preme Court held that the servitude was created when title was conveyed to the buyer, not when the promise to sell was made. In *Chicago Mill & Lumber Co. v. Ayer Timber Co.*[23] the landowner entered a lease-option contract for a term of five years, during which the landowner retained the right to explore for minerals. After five years, the lessee could exercise its option to purchase the land subject to a mineral servitude in favor of the lessor. The lessee exercised its option and then challenged the validity of the mineral servitude reservation. The court first held that the mineral servitude reservation violated the rule enunciated in *Hicks v. Clark*. But on rehearing[24] the court upheld the contract under the reasoning of *Ober v. Williams*.

The defendant contends that this agreement is different, because in 1972 Hazel Fisher did not own an interest in the Northwest Quarter and Mineral Code article 24[25] allows only a "landowner" to create a mineral servitude. The defendant's argument, however, avoids the issue of when the servitude was created. The defendant assumes that Hazel Fisher created a mineral servitude in 1972, but *Ober v. Williams* and *Chicago Mill & Lumber Co.* make it clear that the date was 1975. In 1972 Hazel agreed to convey her interest in the Northwest Quarter to Franklin Fisher on the condition that Hazel would inherit an interest in that property. When that condi-

tion was satisfied in 1975, Hazel created a mineral servitude.[26]

The Louisiana Mineral Code does not address explicitly this situation, but the Mineral Code provides: "If this Code does not expressly or impliedly provide for a particular situation, the Civil Code or other laws are applicable".[27] The plaintiffs persuasively argue that Hazel Fisher created a mineral servitude according to the after acquired title doctrine stated in Louisiana Civil Code article 726: "Parties may agree to establish a predial servitude on, or for the benefit of, an estate of which one is not then the owner. If the ownership is acquired, the servitude is established."[28] This mineral reservation did not violate the public policy stated in *Hicks* where a previous landowner claimed an outstanding mineral servitude when it prescribed. Here the servitude's creation was dependent on Hazel's inheritance. The Northwest Quarter was not burdened with a servitude until 1975. The defendant is also estopped to deny the after acquired title doctrine's operation regarding the mineral servitude, because the defendant accepts the benefit of its operation, that is, title to Hazel Fisher's inherited interest in the Northwest Quarter.[29]

## III. CONCLUSION

Because the 1968 transaction between Julie Fisher and her children was an absolute nullity, Hazel and Franklin Fisher did not own an interest in the Northwest Quar-

---

**23.** 131 So.2d 635 (La.Ct.App. 2d Cir.1961).

**24.** *Id.,* 131 So.2d at 644–52.

**25.** "Except as provided in Article 25, a mineral servitude may be created only by a landowner who owns the right to explore for and produce minerals when the servitude is created." La. Rev.Stat.Ann. § 31:24 (West 1975).

**26.** The defendant cites the oversale of minerals situation as the sole exception to the rule of *Hicks,* but this exception is based on the same rationale as *Ober v. Williams* and *Chicago Mill. See* La.Rev.Stat.Ann. § 31:77 (West 1975); *Bates v. Monzingo,* 221 La. 479, 59 So.2d 693 (1952). Professor McDougal describes the oversale exception as follows: "when the landowner who oversold the mineral interests either acquires the outstanding mineral interest or is the land-

owner when the outstanding interest is extinguished, the title to the servitude will vest in the grantee who *purportedly* acquired it earlier". McDougal, at 1107 (emphasis added). The oversale becomes effective when the seller obtains title, just as Hazel Fisher's mineral servitude reservation became effective when she inherited an interest in the Northwest Quarter. Compare *Ober v. McGinty,* 66 So.2d 385 (La.Ct.App. 2d Cir.1953), holding that the vendor's reservation of a mineral servitude and an option to extend the servitude is in violation of the rules of prescription.

**27.** La.Rev.Stat.Ann. § 31:2 (West 1975).

**28.** La.Civ.Code Ann. art. 726 (West 1980).

**29.** *See, e.g., Jackson v. United Gas Public Serv. Co.,* 196 La. 1, 198 So. 633 (1940).

---

ter until 1975, when Julie Fisher died and her property passed to them by intestacy. Then Hazel Fisher's 1972 agreement to convey her interest in the Northwest Quarter subject to a mineral servitude became effective. The district court's contrary summary judgment and dismissal of the plaintiffs' complaint is reversed and the case is remanded for further proceedings consistent with this opinion.

REVERSED and REMANDED.