**Ida Marie Cutler LYONS, etc., et al.,
Plaintiffs–Appellees,**

**v.**

**Franklin Lee FISHER,
Defendant–Appellant.**

**No. 89–4039.**

United States Court of Appeals,
Fifth Circuit.

Nov. 24, 1989.

I.P. Saal, Jr., Gueydan, La., Raymond A. Beyt, Lafayette, La., Harry A. Rosenberg, M. Nan Alessandra, New Orleans, La., for defendant-appellant.

Edwin K. Hunter, Patrick Gallaugher, Jr., J. Michael Veron, Scofield, Bergstedt, Gerard, Mount & Veron, Lake Charles, La., Patrick W. Gray, Lafayette, La., for plaintiffs-appellees.

Before KING, JOLLY and DUHE, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This case is before us a second time on appeal. In this appeal we address whether the district court erred in concluding that the prior opinion of this court established the law of the case regarding the consideration supporting a 1968 land transaction and thus required it to enter summary judgment for the plaintiffs, thereby recognizing their mineral rights in the property.

## I

### A.

We adopt the prior panel's statement of the relevant facts and procedural history.

On May 7, 1968, Julie Fisher donated the northwest quarter of section 34, township 11 south, range 3 west, Vermillion Parish, Louisiana ("Northwest Quarter"), to her son, Franklin Fisher, and daughter, Hazel, in indivision. In this donation, Julie Fisher reserved a mineral servitude in the Northwest Quarter. The very next day, May 8, 1968, Franklin and Hazel purportedly sold the usufruct[1] of the Northwest Quarter's surface to their mother, Julie, for ten dollars ($10.00) and "other good and valuable consideration and services rendered". It is the validity of this transaction that constitutes the core of this litigation.

On November 27, 1972, Hazel Fisher conveyed her interest in the Northwest Quarter to Franklin Fisher, reserving a mineral servitude. Julie Fisher died intestate on January 12, 1975. She was survived only by Hazel and Franklin, so that they inherited her estate in indivision. In November 1978, mineral operations commenced on the Northwest Quarter. On July 28, 1980, Hazel died intestate.

In August 1982, Hazel's heirs and Franklin Fisher jointly leased the Northwest Quarter for mineral exploration to Hunt Oil Co. In March 1985, Franklin and Hunt Oil

---

1. "Generally speaking, a person who has a usufruct over immovable property has two basic rights—the right to possess, use and enjoy the property and the right to receive the fruits produced by the property." *Clark v. Brecheen,* 387 So.2d 1297, 1301 (La.Ct.App. 1st Cir.1980).

executed an amendment to the 1982 lease in effect recognizing Franklin as the sole owner of the minerals underlying the Northwest Quarter.

On November 27, 1985, Hazel's heirs commenced an action in Louisiana state court, seeking a declaratory judgment recognizing their ownership of an undivided one-half mineral interest in the Northwest Quarter. The defendants removed the suit to federal court on the basis of diversity jurisdiction. The district court then granted Franklin Fisher's motion for summary judgment, recognized him as the owner of the disputed mineral servitude and dismissed the complaint. The court, however, declined to adjudicate the validity of the 1968 transaction. It noted that, assuming the transaction was valid, Hazel Fisher, the Lyons' mother, could not have legally reserved a mineral servitude in that property in 1972 because the mineral rights were then held by her mother. Since drilling on the land did not commence until after May 1978, Franklin, who had acquired title to the remainder of the surface estate by virtue of Hazel's conveyance in 1972, acquired title to the mineral estate through prescription. The court next assumed that the 1968 transaction was invalid as a disguised usufruct reservation; it noted that in that case, Franklin acquired title to the surface estate in 1975 by virtue of the Louisiana after-acquired-title doctrine and to the mineral estate in 1978 by virtue of prescription. The plaintiffs appealed to this court. *Lyons v. Fisher*, 847 F.2d 1158, 1158–59 (5th Cir.1988).

### B.

On appeal, a panel of this court reversed the district court's order granting the defendant Franklin Fisher summary judgment. The panel reasoned that the lower court had "erroneously assumed" that regardless of the validity of the 1965 transaction, Franklin acquired title by liberative prescription in May 1978. 847 F.2d at 1160. On the contrary, the panel concluded, when prescription occurred is "wholly dependent upon the validity of the 1968 transaction." *Id.* The panel, then, pro-

ceeded to evaluate the transaction and concluded that it did not involve a sale at all. Instead, it was a "disguised usufruct reservation" prohibited under section 1533 of the Louisiana Civil Code, which provides: "The donor is permitted to dispose, for the advantage of any other person, of the enjoyment or usufruct of the immovable property given, but cannot reserve it for himself." The court, therefore, held that the 1968 transaction was an "absolute nullity" and, under the Louisiana after-acquired-title doctrine, the mineral servitude Hazel Fisher reserved to herself as part of her conveyance of her interest in the Northwest Quarter in 1972 became effective upon the death of her mother in 1975. The court, then, remanded the case to the district court for "further proceedings consistent with this opinion."

On remand, the plaintiffs Lyons moved for summary judgment, citing the panel's opinion. In response, Fisher filed an affidavit asserting that his mother had paid him and his sister $450 for the usufruct in 1968 and contended, therefore, that the transaction was not, as the opinion of this court had held, a disguised usufruct reservation. The district court, however, refused to consider the evidence, holding that the decision of this court that the 1968 transaction was an "absolute nullity" precluded the district court from further considering the case. Accordingly, the district court entered summary judgment for the plaintiffs Lyons. Fisher appeals.

### II

In this appeal, Fisher argues that the district court erred in concluding that the prior panel decision established the law of the case regarding the sufficiency of the consideration for the 1968 usufruct sale; second, that, assuming the law of the case applies, the district court erred in refusing to apply the "substantially different evidence" and the "manifest injustice" exceptions to the doctrine. Specifically, he argues that his affidavit, in which he stated that his mother paid $450 for the usufruct constituted "substantially different evidence," which should have been considered

by the district court on remand; he asserts that the prior panel's conclusion that the consideration paid by Julie Fisher for the 1968 usufruct was "not fixed and determined" as required by article 2464 of the Louisiana Civil Code was "clearly erroneous" and its refusal to consider his evidence to the contrary would work "manifest injustice." Finally, Fisher argues that because there remained a genuine issue of material fact concerning the consideration supporting the 1968 usufruct, the district court erred in granting summary judgment.

## III

### A.

■ We first consider whether the prior panel opinion established the law of the case with respect to the adequacy of the consideration in the 1968 transaction. The "law of the case" doctrine provides that "a decision of a factual or legal issue by an appellate court establishes the 'law of the case' and must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court...." *Goodpasture, Inc. v. M/V Pollux*, 688 F.2d 1003, 1005 (5th Cir.1982) (quoting *White v. Murtha*, 377 F.2d 428, 431–32 (5th Cir.1967)). This rule is "based on the salutary and sound public policy that litigation should come to an end." *Carpa, Inc. v. Ward Foods, Inc.*, 567 F.2d 1316, 1319 (5th Cir.1978) (quoting *White v. Murtha*, 377 F.2d at 443).

After an examination of the previous proceedings and appeal in this case, we must conclude that the validity of the 1968 usufruct transaction was before the prior panel of this court and that the panel clearly and expressly decided the question in favor of the Lyons. In the initial proceedings before the district court, both parties briefed the sufficiency of the consideration supporting the 1968 transaction. Indeed, throughout the litigation, the Lyons urged the lack of consideration for the 1968 usufruct sale as the cornerstone of their argument that they owned a one-half mineral interest in the Northwest Quarter. In their memorandum in opposition to Fisher's

motion for summary judgment, the Lyons contended that "the nominal consideration of $10 is not considered serious consideration and the so-called 'sale' of the usufruct was in truth a donation." In their motion to supplement the exhibits in opposition to Fisher's motion for summary judgment, the Lyons attached Fisher's deposition in which he essentially conceded that the usufruct transaction was a gift, not a sale.

For his part, in the previous proceedings Fisher pled the validity of the 1968 transaction in his motion for summary judgment. He rebutted the Lyons' assertion that the usufruct transaction was not a sale by adverting to the language of the conveyance ("$10 and other good and valuable consideration and services rendered") and attempting to thrust the burden of proof regarding the "other good and valuable consideration" onto the appellees.

Although in the previous proceedings the district court did not decide whether the 1968 usufruct sale was valid, concluding that Fisher nonetheless acquired title to the mineral rights by prescription in 1978, on appeal this issue was squarely briefed and argued before the prior panel. There can be no doubt that the panel grounded its reversal of summary judgment on its finding that there was insufficient consideration to support the 1968 transfer of the usufruct. The court noted, "Ten dollars is insufficient consideration for the lifetime usufruct of almost any property, except perhaps a square foot of swampland in the Atchefalaya Basin.... Clearly this transaction violated former article 1533, which makes it an absolute nullity to be ignored by this Court." *Lyons v. Fisher*, 847 F.2d 1158, 1160–61 (5th Cir.1988). Consequently, the panel's decision that there was insufficient consideration established the law of the case and, absent an exception to the law-of-the-case doctrine, required the district court to enter summary judgment for the Lyons.

### B.

### (1)

We thus turn to consider whether the district court should have recognized an

exception to the law-of-the-case doctrine. We have held that the law-of-the-case will not apply where (1) the evidence on a subsequent trial was substantially different, (2) controlling authority has since made a contrary decision of the law applicable to such cases, or (3) the decision was clearly erroneous and would work manifest injustice. *Goodpasture,* 688 F.2d at 1006. Fisher argues that we should apply the first and third exceptions, but we decline to do so.

■ Fisher argues that the district court should have considered, as an exception to the law-of-the-case doctrine, evidence adduced on remand that his mother paid him and his sister $450 for the usufruct because it was new evidence and "substantially different" from evidence produced at trial. We have held that the " 'substantially different' evidence exception to the law-of-the-case doctrine does not apply where a prior appeal has not left the issue open for decision." *Goodpasture,* 688 F.2d 1003, 1006 n. 5. The prior panel emphatically held that there was insufficient consideration for the "sale" of the usufruct; indeed, it thrice characterized the transaction as an "absolute nullity." 847 F.2d at 1161, 1162. This issue was therefore foreclosed on remand. Thus, the district court properly denied Fisher the right on remand to offer evidence that he had had every opportunity and incentive to produce at the earlier proceeding.

### (2)

■ Fisher argues next that the district court erred in refusing to hold the law-of-the-case doctrine inapplicable because the panel's decision was "clearly erroneous" and the error works "manifest injustice." Specifically, he contends that the prior panel misinterpreted Louisiana precedent as requiring that the contract price must be expressed within the four corners of the document in order that it be "fixed and determined" within the meaning of article 2464 of the Louisiana Civil Code. This error of law, he contends, works the injustice, if the law-of-the-case doctrine is applied, of precluding his introducing evidence that adequate consideration was in fact paid for the usufruct.

We need not decide whether Louisiana law requires a price term to be included within a contract of sale for it to be "fixed and determined," because we perceive no manifest injustice to Fisher. We might be persuaded that manifest injustice had occurred as a result of the alleged error if Fisher had presented such evidence in the prior proceeding and the previous panel had disregarded the evidence because of a misunderstanding of the law, or if consideration had become an issue only after it reached the appellate level and Fisher had had no opportunity in the prior proceeding to adduce such evidence. The truth is, however, that Fisher flatly failed in the prior proceeding, for reasons best known to him, to adduce evidence of any consideration, despite his having both the reason and opportunity to do so. It was only after this court rendered its decision, and it became apparent that consideration was indeed the win-lose issue of this case, that Fisher belatedly attempted to introduce evidence of additional monetary consideration. Thus, given his opportunity and his puzzling failure to adduce such evidence earlier, we hold that Fisher has not suffered "manifest injustice" simply because the law-of-the-case doctrine may now preclude his tardy introduction of that evidence.

### C.

■ Notwithstanding the absence of the usual exceptions to the law-of-the-case doctrine, Fisher argues that the district court erred in applying the doctrine to exclude introduction of additional evidence, because, under *United States v. U.S. Gypsum Co.,* 340 U.S. 76, 85, 71 S.Ct. 160, 167–68, 95 L.Ed. 89 (1950), he was entitled to introduce additional evidence on remand. He argues further that if allowed to introduce evidence of consideration, he would have created a genuine issue of material fact, thus making summary judgment inappropriate.

*Gypsum,* however, is a much different case. In that case, the United States sued the gypsum board manufacturers for price

fixing in violation of the Sherman Act. At the close of the government's case-in-chief, and before the defendants offered any evidence, the defendants successfully moved to dismiss the complaint under Federal Rule of Civil Procedure 41(b). On direct appeal, the Supreme Court reversed, holding that the government's evidence established a prima facie case of conspiracy prohibited by the Sherman Act, and remanded "for further proceedings in conformity with [its] opinion." *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 401, 68 S.Ct. 525, 544–45, 92 L.Ed. 746. On remand, the district court rejected the defendants' proffer of evidence and granted the government's motion for summary judgment. The defendants objected to the summary judgment disposition of the case on the ground that they had the right to introduce evidence to counter the government's prima facie case. In upholding the district court's grant of summary judgment, the Supreme Court observed:

> Of course, when we remanded the case to the District Court the defendants had the right to introduce any evidence that they might have as to why all or any one of them should be found not to have violated the Sherman Act.... Such rights, however, did not require the trial court to admit evidence that would not affect the outcome of the proceedings. They did not affect the power of the trial court to direct the progress of the case in such a way as to avoid a waste of time.
>
> A summary judgment, under rule 56, was permissible on remand.

340 U.S. at 85, 86, 71 S.Ct. at 167, 168.

It is clear to us that *Gypsum* offers no support to Fisher's position. Here, the earlier proceeding in the district court was not disposed of on a Rule 41(b) motion in favor of the defendants; rather, Fisher fully presented his case before moving for, and securing, a summary judgment. Unlike the defendants in *Gypsum*, Fisher has had his day in court. Furthermore, unlike the first opinion of the Supreme Court in *Gypsum*, the previous panel here did not decide the issue of consideration on a prima facie basis, but on the basis of a final disposition. Therefore, after the previous panel re-

versed summary judgment and remanded for "further proceedings consistent with [its] opinion," the district court, acting consistent with the Supreme Court's affirmance of summary judgment in *Gypsum*, rejected Fisher's efforts to retry issues that had been litigated and decided in the previous proceeding in the case, and properly granted summary judgment to the plaintiffs.

### IV

For the reasons stated above, we hold that the district court properly applied the law-of-the-case doctrine, and properly granted summary judgment. Its judgment is therefore

AFFIRMED.